**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 93-2463

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DAVID J. TOWNSEND,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Texas

(August 25, 1994)

Before REYNALDO G. GARZA, SMITH, and PARKER, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Defendant was convicted under I.R.C. § 7201 for evasion of excise tax. The district court found a tax deficiency, affirmative acts constituting tax evasion, and that defendant acted willfully. For the reasons discussed below we affirm.

## I. Introduction

This case involves the use of a fraudulent Form 637 in an attempt to circumvent federally imposed excise tax. In 1987

federal law imposed an excise tax of nine cents on each gallon of gasoline sold for highway use. A wholesale distributor of gasoline holding a valid "Registration for Tax-Free Transactions," or Form 637, could purchase gasoline free of the excise tax. A Form 637 enables a distributor to purchase gas tax-free and sell it tax-free to a registered wholesaler or retailer. The distributor becomes liable for the excise tax if it sells to an unregistered buyer. In this case Appellant fraudulently presented a Form 637 to several distributors, purchased the gas, and then promptly sold the gas to an unregistered buyer.

## II. Background

David Townsend, the inventor of a gasoline oxygenating product, moved his California-based fuel blending business (Anafuel) to Houston, Texas in 1986. Townsend, with Lloyd Maxwell, Lamar Maxwell, David Maxwell, Don Maxwell, and Arthur Maxwell formed Petrolife, Inc. (Petrolife), a gasohol blending company. Appellant Townsend was named chief executive officer, Lloyd Maxwell was named the secretary-treasurer and chief financial officer, and Lamar Maxwell was named president.

In November of 1986 Petrolife decided to apply for a Form 637. Signed by Lloyd Maxwell as chief financial officer and dated November 20, 1986, the form was submitted to the IRS. IRS Agent Mike Grayson met with Lloyd Maxwell and Charles Crockett, a Petrolife employee, to discuss the application. Agent Grayson explained the requirements of the Form 637 and told them that it

2

could take several months to obtain approval. Petrolife decided that they were not prepared to disclose all the necessary financial information required for approval at that time. Consequently, the application was deferred. Mr. Crockett was to retain Petrolife's copies of the application until the corporation was ready to reapply. Petrolife never reapplied for the Form 637.

Subsequently, Appellant asked Mr. Crockett for the application. Mr. Crockett handed the application to him under the assumption that he was seeking to reapply for approval. Later that day Townsend showed Mr. Crockett the Form 637 and said that he had obtained a registration number and the signature of the IRS district director.[1]

In July of 1987 Townsend contacted Jetero, a gasoline distributor, and expressed interest in making a purchase. Jetero met with Townsend and discussed forms Jetero required before fuel could be supplied. Townsend provided the necessary forms, including the fraudulent Form 637. These forms listed Petrolife as a manufacturer selling gasohol and listed Petrolife/Anafuel as the purchaser. Upon receipt of the required forms Jetero commenced supplying the fuel tax-free. The Jetero invoices were addressed to "Petrolife, Attn: David J. Townsend."
A total of 264,030 gallons of gasoline were purchased from Jetero in August of 1987.

---

[1]Mr. Crockett testified that he was surprised that Townsend was able to procure approval of Form 637 so quickly and seemingly without leaving the building. It was his understanding that it could take several months to obtain approval.

Townsend also contacted Crown, another gasoline distributor, expressing his desire to purchase gasoline. After he provided the requested documentation, including the fraudulent Form 637, Crown began supplying gasoline. The checks used to pay for the gas listed Petrolife/Anafuel as purchaser. A total of 161,679 gallons of gasoline were purchased from Crown in August of 1987.

The gasoline supplied by Jetero and Crown was shipped to Mr. Chehade Boulos, a service station operator. The funds used by Townsend were drawn from an account opened in the name of Anafuel at the Lone Star Bank. Mr. Boulos would make deposits to this account in exchange for the gasoline shipments. The bank would then issue cashier checks, which were used to pay Crown and Jetero. Basically, Townsend used the funds prepaid by Mr. Boulos to make the payments to Crown and Jetero.

No taxes were paid by Townsend or Petrolife on the gasoline sold to Mr. Boulos.[2] By using the fraudulent Form 637 and purchasing gas through an Anafuel account, Townsend acted without the knowledge or consent of the other officers of Petrolife. When Mr. Crockett became aware of Appellant's transactions he informed Mr. Lloyd Maxwell of his intention to inform the IRS. Mr. Maxwell approved.

IRS Agent Grayson became aware of the fraudulent Form 637 during a routine inspection of Jetero's records. Agent Grayson immediately knew the form was invalid. First, he knew that

---

[2]Mr. Boulos testified that he thought the taxes were included in the purchase price of the gasoline.

4

Petrolife's Form 637 had never been approved. Second, the registration number did not correspond to the numbers issued by the Houston office. Third, the signatures on the form were not signed properly. Agent Grayson spoke with Mr. Gonzales, the owner of Jetero, concerning the problem. Mr. Gonzales told Appellant that the registration number was invalid. Townsend responded rather angrily that the number was correct. Later he told Mr. Gonzales that he had a new temporary number. Notwithstanding the temporary number, Mr. Gonzales refused to sell any more gasoline to Townsend on advice of the IRS.

IRS Agent Vitz took over the investigation. Agent Vitz observed the same inconsistencies in the Petrolife Form 637 and therefore contacted Townsend. On September 5, 1987 Agent Vitz requested more information regarding the application. Townsend promised that the information would be forthcoming. After receiving no new information, Agent Vitz paid a visit to his office. Townsend again stated that the registration number was a temporary number issued by the Houston office. But no temporary numbers had issued in 1987.

Agent Taylor met with Townsend and showed him the fraudulent Form 637 and asked if he had ever seen this form. Townsend replied that Mr. Crockett had presented this form to him but that he, Townsend, had never given it to anyone.

On May 20, 1992 a grand jury indicted Townsend for attempting to evade federal excise taxes in violation of I.R.C. § 7201. Townsend was convicted by a jury before Honorable Melinda Harmon in

5

March of 1993. He was sentenced to 14 months in prison and three years supervised release; he was fined $10,000 and specially assessed $50.

Townsend appeals the district court's rulings on four bases. The first basis asserted is whether there was sufficient evidence to support a conviction. Second is whether the district court abused its discretion in limiting Appellant's cross-examination of certain witnesses. The third basis is whether the district court abused its discretion in allowing opinion testimony concerning Appellant's liability on federal excise tax. The fourth basis Appellant urges is whether the district court erred in failing to include a proposed jury instruction in the charge. For reasons discussed below, we affirm the decision of the district court.

## III. Discussion

1. Sufficiency of the Evidence to Support the Conviction

The standard of review for sufficiency of evidence appeals is whether a rational fact finder could find the essential elements constituting the crime beyond a reasonable doubt. United States v. Nixon, 816 F.2d 1022, 1029 (5th Cir. 1987), cert. denied, 484 U.S. 1026 (1988). In viewing the evidence under the rational fact finder standard, this Court is obliged to take all inferences reasonably drawn from the evidence in the light most favorable to the verdict. United States v. Molinar-Apodaca, 889 F.2d 1417, 1423 (5th Cir. 1989).

To prove a violation of I.R.C. § 7201 the government must prove (1) the existence of a tax deficiency, (2) an affirmative act constituting an evasion or attempted evasion of the tax, and (3) that the defendant acted willfully. Sansone v. United States, 380 U.S. 343, 351 (1965); United States v. Wisenbaker, 14 F.3d 1022, 1024 (5th Cir. 1994). The first issue that must be addressed is whether there was a tax deficiency. Wisenbaker, 14 F.3d at 1024. Excise taxes for the quarter ending September 30, 1987 were due and owing in the amount of $38,313.81[3] on the gasoline bought from Crown and Jetero and resold to Mr. Boulos. The existence of a tax deficiency was not contested by Appellant. However, Appellant did take issue as to who owed the tax. He claims that Petrolife owed the tax and he therefore could not be convicted of evading tax of another. This is clearly wrong. I.R.C. § 7201 provides that it is a violation for "any person" to willfully attempt to evade or defeat "any tax." I.R.C. § 7201 is not limited to prosecutions of those who evade taxes that they may owe themselves, but rather it encompasses prosecutions of any person who attempts to evade the tax of anyone. See id. at 1024-25. It is the act of evasion that is proscribed; adopting the limited reading Appellant asserts would severely restrict if not defeat the purpose of the statute.

The second issue that must be determined is whether Appellant committed an affirmative act of tax evasion. Id. at 1024.

_____

[3] A total of 425,709 gallons of gasoline was bought and resold: 264,030 gallons from Jetero and 161,679 gallons from Crown. The deficiency arose automatically when the tax became due at the end of the quarter and no excise tax return was filed.

Townsend contends that the government failed to prove this element. Taken in the light most favorable to the verdict, the evidence reveals that Townsend committed numerous affirmative acts. Townsend prepared a fraudulent Form 637 that contained two forged signatures and a fabricated registration number. He presented the fraudulent Form 637 to Crown and Jetero in furtherance of his tax-free transaction. He also arranged for the purchase and subsequent sale of gasoline to Mr. Boulos, an unregistered retailer. Townsend signed a customer card agreement enabling him to purchase tax-free gasoline from Crown and signed a federal excise tax exemption certificate required by Jetero, certifying that he was registered to purchase tax-free gasoline. He arranged for the purchase to be made with cashiers checks that were paid from funds deposited by Mr. Boulos into an account opened in the name of Anafuel over which Townsend's son had signature authority. Subsequent to the purchase and sale, Townsend told Agent Taylor that he had never presented the Form 637 to anyone when in fact he had. Finally, he told Agent Vitz that he had obtained a temporary registration number, which turned out to be fabricated. Taking this evidence as true establishes beyond a reasonable doubt that Townsend took affirmative acts of tax evasion.

The final issue in which this Court must inquire is whether Appellant acted willfully. Id. at 1024. The U.S. Supreme Court has recognized that the term "willfully" connotes a voluntary, intentional violation of a known legal duty. United States v. Pomponio, 429 U.S. 10, 12 (1976). I.R.C. § 7201 imposes that duty

8

and the evidence taken in the light most favorable to the verdict establishes that Appellant acted willfully in violation of this duty. Townsend was experienced in the motor fuels industry and demonstrated familiarity with legal duties imposed by the federal tax scheme. He was no proverbial babe in the woods. He obtained and fraudulently completed a Form 637 and presented it to distributors. Townsend manifested knowledge that his actions were unlawful by attempting to hide them from both Jetero and the IRS agents. Finally he attempted to conceal the gasoline transactions by conducting them through a non-Petrolife bank account. Therefore, the evidence established a tax deficiency, revealed affirmative acts constituting an attempt to evade the excise tax, and demonstrated that Townsend acted willfully.

2. Cross-Examination of Government Witnesses

Appellant argues that the district court erred in restricting his cross-examination of various government witnesses regarding (a) falsification of corporate records, (b) bad business practices, and (c) testimony that Townsend was personally liable for excise tax. The applicable Federal Rules of Evidence are 403, 404(b), and 608(b).[4] "The admission or exclusion of evidence at trial is a matter committed to the discretion of the trial court." United States v. Moody, 903 F.2d 321, 326 (5th Cir. 1990). We review the trial court's ruling under the abuse of discretion standard. Id.

_____

[4]Appellant asserts due process violations yet cites only evidentiary authority. Accordingly, we will address each issue under the Federal Rules of Evidence.

If we find that an abuse of discretion has occurred we view the error under the harmless error doctrine.  <u>Id.</u>  The right and opportunity to cross-examine an adverse witness is guaranteed by the sixth amendment.  <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 678-79;  <u>Moody</u>, 903 F.2d at 329.  However, the trial court is given "wide latitude" in imposing reasonable restraints upon defendant's right to cross-examination.  <u>Moody</u>, 903 F.2d at 329.[5]

A.  Falsification of Corporate Records

Townsend contends that the district court abused its discretion in overly restricting the cross-examination of Mr. Crockett and Mr. Maxwell concerning their conduct in allegedly falsifying Petrolife's corporate records.  Townsend claims that Mr. Crockett's deposition indicated that the records were falsified in anticipation of bankruptcy and the IRS investigation.  Appellant sought to introduce this evidence in hopes of impeaching their testimony.  Rule 608(b) of the Federal Rules of Evidence provides that a witness may be questioned about specific instances of conduct, in the discretion of the trial court, to attack the witness's reputation for truthfulness. Rule 403 requires the trial court to balance the dangers of unfair prejudice, confusion of the issues, misleading the jury, or waste of time against the probative value of the evidence.

_____

[5]The trial court may not place the witness's character or reputation for veracity outside the scope of inquiry.  <u>Moody</u>, 903 F.2d at 329;  <u>See generally</u> <u>United States v. Garza</u>, 754 F.2d 1202, 1206 (5th Cir. 1985)

The district court found that Mr. Crockett's deposition did not support Appellant's assertion that the corporate minutes were falsified. The district court disputed Appellant's contention of falsification finding a lack of evidence to support this line of questioning.[6] Furthermore, the district court held that admitting the evidence would only serve to mislead and confuse the jury, and prolong the trial. This Court will reverse a decision of the trial court in excluding or admitting evidence only upon a showing that the trial court abused its discretion in weighing the probative value of the evidence against its prejudicial effect. United States v. York, 888 F.2d 1050, 1056 (5th Cir. 1989). Because Appellant cannot show an abuse of discretion we affirm the district court's decision to exclude this evidence.

Appellant also contends that the evidence of falsification demonstrates Mr. Crockett's and Mr. Maxwell's propensity, motive, and opportunity to falsify the Form 637. The motives for falsification, Townsend asserts, were for personal and corporate gain and self-vindication. He claims that these motives were the same as those that allegedly led Mr. Maxwell and Mr. Crockett to apply for the Form 637 and to testify against Townsend. Further, Townsend contends that the scheme to falsify the corporate records was "sufficiently similar if not identical to the offense of falsifying a Form 637."

---

[6]The district court found that the corporate minutes had not been kept up to date and it was unclear from the deposition what, if any, part of the minutes were not true. Based on Mr. Crockett's explanation of the deposition, the court found insufficient evidence of fraud.

Rule 404(b) provides that a defendant may offer through extrinsic evidence or by cross-examination similar bad acts, crimes, or wrongs to show motive, opportunity, intent, and the like.[7] However, under Rule 404(b), evidence of crimes, wrongs, or acts is not admissible if offered to prove the character of a witness in order to show that the witness acted in conformity therewith on a particular occasion. As discussed above, the district court did not find a scheme or plan to falsify the corporate records, thereby refuting the reasons Appellant proffered for introducing the evidence. Furthermore, Appellant's brief indicates that the evidence was introduced for purposes of showing conformity rather than motive or intent in direct contravention to Rule 404(b). Appellant alleged that the "scheme to falsify documents to mislead or defraud the bankruptcy court and the IRS was sufficiently similar if not identical to the offense of falsifying a Form 637." Therefore, this Court affirms the district court's decision in excluding the evidence. Because the district court did not commit error, we do not reach application of the harmless error doctrine.

B. Bad Business Practices

Townsend also contends that the district court erred in curtailing his cross-examination of Mr. Boulos. Appellant asserts

---

[7]See also United States v. Luffred, 911 F.2d 1011, 1015 (5th Cir. 1990) (holding that prior bad acts may be relevant under Fed. R. Evid. 404(b) to prove that a witness had the opportunity and ability to concoct a fraudulent or deceitful scheme).

that Mr. Boulos's alleged bad business practices would reveal his motive and intent to use Townsend's son to set up a bank account. Mr. Boulos, Appellant contends, failed to timely pay his bills, "bounced" checks, and sold substandard gasoline. The unauthorized use of the bank account circumvented a credit check by Crown and Jetero in furtherance of the tax evasion scheme. Under 404(b) evidence of crimes, bad acts, or wrongs are admissible to prove intent or opportunity. However, the district court found no evidence showing that Mr. Boulos knew of or aided Townsend in the tax evasion scheme.

Townsend asserts that Mr. Boulos was also guilty of tax evasion if he knowingly carried out the scheme to buy gas tax-free. These facts would serve to impeach Mr. Boulos under 608(b). Rule 608(b) provides that specific acts of misconduct, though they cannot be proved by extrinsic evidence, may be elicited on cross-examination to impeach the credibility of a witness. But again Rule 403 serves to temper the otherwise unreigned use of 608(b). The district court did not find that Mr. Boulos participated in any scheme of tax evasion and therefore excluded this testimony. The district court did not abuse its discretion because trivial acts, such as untimely payment, should be excluded, absent evidence of a fraudulent scheme, because the dangers of confusing the issues and misleading the jury substantially outweigh any minor probative value the testimony would have.

C. Evidence of Townsend's liability for the excise tax

13

Townsend contends that the district court abused its discretion in prohibiting cross-examination into areas of the Comptroller's decision and Mr. Maxwell's letter, dated March 27, 1989. The Comptroller held that Petrolife rather than Townsend was liable for state excise tax. In the Maxwell letter Mr. Maxwell allegedly expressed the desire to align himself with the IRS's position in order to avoid Petrolife's tax liability. Appellant contends that he had a right to impeach the witness and reveal the motivation and bias of Mr. Maxwell's adversarial testimony. Appellant has failed to show any evidence in the record indicating an arrangement under which Mr. Maxwell would receive any benefit for cooperating with the government. The district court found, under Rule 403, that the probative value of the testimony was substantially outweighed by the danger of confusion of the issues. Because Appellant has failed to show that the district court abused its discretion, we affirm the district court on this point. York, 888 F.2d at 1056; see also United States v. Sutherland, 929 F.2d 765, 777 (1st Cir.) cert. denied, 112 S. Ct. 83 (1991) (holding that appellant failed to demonstrate a basis for suspecting bias other than a conclusory allegation).

Agent Vitz testified that Townsend was liable for the excise tax. Appellant contends that he had a right to cross-examine Agent Vitz concerning the Maxwell letter and the Comptroller's decision holding Petrolife liable for state excise tax. The district court excluded this testimony under Rule 403. We find no error requiring reversal. Anyone who willfully evades a tax is in violation of

14

I.R.C. § 7201 regardless of who owed the tax.[8]  Thus, exclusion of testimony that Townsend was not personally liable was harmless error.

3.  Expert Testimony

The government called Agent Vitz as a summary witness and an expert on excise tax.  Agent Vitz testified that Townsend became liable for the excise tax when he sold it to Mr. Boulos. Agent Vitz also calculated the tax deficiency owed on the gas sold to Mr. Boulos.   Appellant contends that the district court erred in admitting this testimony because it interfered with the jury's function, it was inadmissible under Fed. R. Evid. 704(b), and it was inadmissible under Fed. R. Evid. 403.

The admissibility of expert testimony rests within the sound discretion of the district court and will be reversed only upon a clear showing of abuse of discretion.  United States v. Charroux, 3 F.3d 827, 833 (5th Cir. 1993).   Rule 703 provides that a qualified expert may testify in the form of an opinion if scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence.  To qualify as an expert, the witness must have specialized knowledge or training such that his or her testimony will assist the fact finder in the determination of a fact issue.   United States v. Bourgeois, 950 F.2d 980, 987 (5th Cir. 1992).  Agent Vitz's training in accounting

_____

[8]As discussed supra all that is required to establish a violation of I.R.C. § 7201 is proof beyond a reasonable doubt of a tax deficiency, affirmative acts of evasion, and willfulness.

15

and experience in tax prosecutions qualifies him as an expert. There is no evidence that the district court abused its discretion in accepting Agent Vitz as an expert as Townsend failed to object to Agent Vitz's qualifications. Accordingly, we will address the substance of his testimony rather than his qualifications.

Appellant contends that Agent Vitz's testimony was an usurpation of the jury's role in violation of Rule 704(b). Rule 704(b) states that an expert shall not testify with respect to the mental state of a defendant in a criminal trial. Agent Vitz did not opine that Townsend intended to file a fraudulent Form 637, rather he testified that the form was invalid. Agent Vitz did not express an opinion about Appellant's state of mind. Accordingly, his testimony was not excludable under Rule 704(b). United States v. Webster, 960 F.2d 1301, 1308-09 (5th Cir.) cert. denied, 113 S. Ct. 355 (1992).

Rule 403 operates to exclude otherwise admissible evidence if the probative value is substantially outweighed by its prejudicial effects. Appellant contends that Agent Vitz's testimony was prejudicial. Testimony presented by the government will invariably be prejudicial to a criminal defendant. But Rule 403 only excludes evidence that would be unfairly prejudicial to the defendant. Here, the probative value of the evidence was not substantially outweighed by its prejudicial effects. Agent Vitz testified as to the existence of a tax deficiency, an element required for a successful prosecution under I.R.C. § 7201. He also opined that Townsend was personally liable on the excise tax. This arguably

16

has probative value.  Someone would be more likely to evade their own tax rather than another's.  Because this testimony was probative and not unfairly prejudicial, we find no error.


4.  Jury Instructions

Appellant requested the district judge to instruct the jury that it could find him liable for a violation of I.R.C. § 7201 only if he personally owed the taxes.  The district court refused, instructing the jury that it could convict the defendant for attempting to evade taxes owed by another.  Appellant cries foul.

The standard of review is abuse of discretion.  United States v. Chaney, 964 F.2d 437, 444 (5th Cir. 1992).  A conviction will not be reversed unless the instructions failed to correctly state the law.  United States v. Coleman, 997 F.2d 1101, 1105 (5th Cir. 1993), cert. denied, 114 S. Ct. 893 (1994).  The issue this Court must decide is whether the district court abused its discretion by refusing the proposed instruction.  A refusal to deliver a requested jury instruction is reversible error only if the proposed instruction was (1) substantively correct, (2) not substantively covered in the jury charge, and (3) concerned an important issue in the trial, such that failure to give the requested instruction seriously impaired the defendant from presenting a defense.  United States v. Mollier, 853 F.2d 1169, 1174 (5th Cir. 1988).

The actual jury charge correctly stated the law.  The instruction traced I.R.C. § 7201 and informed the jury that they could convict Townsend for evading Petrolife's tax liability.  See

17

<u>United States v. Troy</u>, 293 U.S. 58 (1934); <u>United States v. Wisenbaker</u>, 14 F.3d 1022, 1026-27 (5th Cir. 1994). Appellant's proposed instruction was not substantively correct. Appellant contends that the jury should have been instructed to find Townsend guilty only if he personally owed the tax. Because I.R.C. § 7201 proscribes evasion of any tax, this instruction fails the first prong of the test. Accordingly, we affirm the district court's ruling.

For the above stated reasons the defendant's conviction is AFFIRMED.