**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No.  97-11208

UNITED STATES OF AMERICA,

Plaintiff-Appellee

VERSUS

CARMEN RAMIREZ,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas

May 3, 1999

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges

JOHN M. DUHÉ, JR., Circuit Judge:

A jury convicted Carmen Ramirez ("Ramirez") of one count of conspiracy to distribute heroin in violation of 21 U.S.C.A. § 846 (West 1999).  Ramirez raises two issues on appeal.  First, Ramirez argues the district court erred in denying her motion for a mistrial or alternatively to strike the government's two main

witness' testimony on the grounds that the government's failure to produce tapes of conversation between the two witnesses violated 18 U.S.C.A. § 3500 ("Jencks Act"). Second, Ramirez argues the district court erroneously excluded the sworn affidavit of FBI special agent James Kendall when Ramirez sought to introduce it as an admission of a party-opponent. For the following reasons, we vacate and remand in part for a hearing concerning the government's culpability regarding the tapes and affirm the district court's evidentiary ruling.

## I. BACKGROUND

The government alleged that Ramirez conspired to smuggle heroin into the federal prison in Seagoville, Texas in which her husband was incarcerated. The government based its case primarily on the testimony of two witnesses: (1) Ronald Secrease ("Secrease"), a special investigations supervisor at the prison; and (2) Wendell Blount ("Blount"), a Seagoville inmate serving time for a white-collar tax offense. Blount acted as a government informer throughout the transaction constantly updating Secrease about the details of the impending transaction through written notes and telephone calls. The prison tapes outgoing phone calls from the prisoners on large reels. When Ramirez discovered through cross-examination of Blount at trial that telephone updates from Blount to Secrease were routinely taped, she moved the court to order the government's disclosure of the tapes. The next day the

2

government produced recordings of two conversations between Blount and Secrease but reported that the Bureau of Prisons destroyed the tapes containing the remaining conversations through its routine procedures. The calls the government produced were available only through coincidence; because they were on the same tapes the U.S. Attorney subpoenaed from the Bureau of Prisons containing phone calls from Mr. Ramirez inside the prison to Mrs. Ramirez. Ramirez moved for a mistrial and alternatively to strike Blount and Secrease's testimony under the Jencks Act due to the unavailability of the tapes for cross-examination. The court denied Ramirez's motion.

Ramirez also sought to introduce the sworn affidavit of FBI Special Agent James Kendall as the admission of a party-opponent under Fed. R. Evid. 801(d)(2)(B). In his affidavit, Kendall affirmed that Blount said Mrs. Ramirez had the heroin at her home. The district court prevented Kendall from testifying as a defense witness earlier in the trial because the defense failed to properly subpoena him as a government agent. The district court excluded Kendall's affidavit because it felt Ramirez was attempting to introduce evidence that was previously properly excluded. Ramirez appeals.

## II. DISCUSSION

### A. Jencks Act

Ramirez argues the district court erred in not declaring a

3

mistrial or striking the testimony of Secrease and Blount as a sanction for the government's non-disclosure under the Jencks Act. The government argues it was not required to disclose the material under the Jencks Act because it did not know of the existence of the taped conversations until after they were erased.[1]

We review a district court's decision concerning the Jencks Act for clear error. See United States v. Martinez, 87 F.3d 731, 734 (5th Cir. 1996). "The trial court's finding will constitute clear error where such finding either rests upon an incorrect rule of law or is inconsistent with the facts upon which it purports to rests." Id. Even when a violation is found, the failure to produce prior statements is subject to a harmless error analysis. See United States v. Martinez, 151 F.3d 384, 391 (5th Cir. 1998). In the context of the Jencks Act, we must strictly apply the harmless error analysis review and determine whether the error itself had a substantial influence on the judgment in addition to determining whether there was sufficient evidence to support the conviction. See United States v. Keller, 14 F.3d 1051, 1054-55 (5th Cir. 1994).

The Jencks Act requires the United States to disclose a prior statement of a witness in its possession relating to the subject matter of that witness' testimony. See 18 U.S.C.A. § 3500

---

[1]The government does not contend that the recordings were not "statements" as defined in the Jencks Act. Ramirez concedes the tapes were destroyed before she was indicted and that the government did not intentionally destroy the tapes.

4

(West 1985). The definition of "statement" includes "a . . . recording . . . which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement." Id. The United States must disclose the information after the witness' direct examination testimony. Id. If the United States fails to disclose, the court must either strike the testimony of the witness or declare a mistrial.[2] Id.

The district court denied a mistrial and refused to strike Blount and Secrease's testimony on two grounds. First, the district court found that the tapes were not in the "possession of the United States", as defined in the Jencks Act, relying on United States v. Trevino, 556 F.2d 1265 (5th Cir. 1977). Second, the district court held it may "apply such remedy as justice requires" because the government's failure to produce the tapes was through its negligence or good faith oversight relying on United States v.

---

[2] The text of the Jencks Act provides:
(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.
(d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement . . . the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

18 U.S.C.A. § 3500 (West 1985)

5

Taylor, 13 F.3d 986, 990 (6th Cir. 1994), United States v. Pope, 574 F.2d 320, 325-26 (2nd Circuit 1978), and United States v. Polizzi, 500 F.2d 856 (9th Cir. 1974). The district court also relied on United States v. Beasley, 576 F.2d 626 (5th Cir. 1978) and United States v. Miranda, 526 F.2d 1319, 1328 (2nd Cir. 1975) holding that where the prosecution acted in good faith the court may determine the appropriate sanctions by weighing the government's culpability against the amount of prejudice resulting to the defendant. The district court found no culpability on the government's part and no prejudice to Ramirez as a result of the destruction of the tapes.

1. "Possession of the United States"

In Trevino, the court held that a presentence report was not "in the possession of the United States" for Jencks Act purposes when it is in the possession of a probation officer. See id. at 1271. However, the court also stated that

> [o]ur decision denying discovery of the presentence report of a government witness under Brady, the Jencks Act, and Rule 16 is not to be read as a comprehensive survey of the boundaries of required disclosure under those provisions . . . Were we considering some type of report held by an arm of the government other than the probation officer, an investigative agency, for example different questions would be presented, those concerning the prosecutor's duty to disclose material not technically within his possession but to which he has ready access.

Id. at 1272. The Jencks Act is not restricted to statements "in the hands of, or known to, the particular prosecuting attorney

6

assigned to the case, the U.S. Attorney's office, the Criminal Section of the Justice Department, or even the entire Justice Department. Its order is unqualified." United States v. Beasley, 576 F.2d 626, 631 (5th Cir. 1978); see United States v. Bryant, 439 F.2d 642, 650 (D.C. Cir. 1971) (holding the duty of disclosure under the Jencks Act "affects not only the prosecutor, but the Government as a whole, including its investigative agencies.")

Secrease, an employee of the Bureau of Prisons, initiated and was constantly involved in investigating the smuggling of drugs into the Seagoville institution. There is no doubt that the Bureau of Prisons was part of the investigative team regarding this transaction. The tapes were in the possession of the Bureau of Prisons until they were taped over, and therefore they were in the "possession of the United States" as defined by the Jencks Act. The district court erred in finding otherwise.

2. Good Faith Exception

The district court also erred in excusing the government's failure to produce the tapes due to its good faith oversight or negligence. While other circuits have fashioned such an exception, see Taylor, 13 F.3d at 990; Pope, 574 F.2d at 325, we have declined to follow this route. "[U]nder the Jencks Act, we consider results, not motive." Beasley, 576 F.2d at 627. "Unless a non-disclosure was harmless error, reversal is required even where the prosecution has acted in good faith." United States v. McKenzie, 768 F.2d 602, 609 (5th Cir. 1985).

7

However, in the case of lost or destroyed evidence, we apply a separate analysis. In <u>United States v. Bryant</u>, 439 F.2d 642 (D.C. Cir. 1971) the court formulated a new approach for lost or destroyed evidence cases under the Jencks Act, Brady and Rule 16 because of the unique circumstances facing a court in that situation. "[I]n these cases we are entirely in the dark." <u>Id.</u> at 648. Because the evidence is no longer available we have no idea whether it would have been favorable to the Defendant. As in this case, the government's case in <u>Bryant</u> also essentially relied on the testimony of one witness. A government agent recorded the conversations of the witness and then "misplaced" the tape because he deemed it unimportant to the case.[3] The court held that Jencks Act sanctions should be imposed in cases of bad faith and negligent suppression of evidence but not in the case of good faith loss by the government. <u>Id.</u> at 651. Because the court found the record on appeal inadequate, it remanded to the trial court to "weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial in order to come to a determination that will serve the ends of justice." <u>Id.</u> at 653. We have adopted this approach when deciding lost and

---

[3]The court in <u>Bryant</u> was faced with the same situation as are we in choosing between affirming the conviction or dismissing the indictment. "A new trial would be simply a repetition of the first trial, similarly infected by non-disclosure" of Jencks material, and a new trial without Blount's and Secrease's testimony would be pointless, since without their testimony there would be no case. <u>Id.</u> at 653.

destroyed evidence cases.  See Johnston v. Pittman, 731 F.2d 1231, 1234 (5th Cir. 1984); Armstrong v. Collier, 536 F.2d 72, 78 (5th Cir. 1976); United States v. Rojas, 502 F.2d 1042, 1044 (5th Cir. 1974).

There is little evidence in the record concerning the degree of the government's culpability in failing to disclose the tapes. However, the government's claim that it had no knowledge of the recordings of conversations between Blount and Secrease until it was exposed on cross-examination seems highly implausible.  The U.S. Attorney's knowledge that all inmate calls from the Seagoville institution were taped is evident from her subpoena of phone calls from Mr. Ramirez to Mrs. Ramirez during the same time period. Additionally, both Secrease and Blount were aware that their conversations were being taped while they were speaking.  These two witnesses' testimony almost exclusively supported the government's case at trial.  On direct examination of Secrease and Blount, the government specifically asked the witnesses how they communicated, and both replied by written note and *telephone*.  Even more telling, Blount testified that while there was no mention of Mrs. Ramirez in any of the written notes, he discussed her involvement frequently with Secrease *over the phone*.  For these reasons, we find it unlikely that the government did not know of the multiple recordings of its star witnesses concerning the subject on which they testified at trial.

9

We also find unpersuasive the government's arguments that it is excused because the tapes containing the lost calls were destroyed before Mrs. Ramirez's indictment. Even so, the tapes were certainly available during the investigation of Ramirez therefore allowing the government to preserve only the conversations it believed were favorable to the prosecution.

Additionally, unlike the district court, we believe there is a high likelihood of prejudice to Ramirez because had the government produced the tapes, Ramirez could have used the evidence to impeach the government's most important witnesses. The district court should explore these issues with the U.S. Attorneys on remand in making a meaningful determination of their culpability regarding the lost recordings. If the district court determines that the government intentionally or negligently lost the tapes containing the conversations, it must dismiss Ramirez's indictment, because a new trial cannot remedy the government's nondisclosure.

## B. Kendall Affidavit

Ramirez argues the district court erred in excluding special agent Kendall's search warrant affidavit. Ramirez asserts the affidavit is admissible as the admission of a party-opponent under Fed. R. Evid. 801(d)(2)(B). The government contends that even if the district court abused its discretion in excluding the affidavit, it was harmless error. We review a district court's ruling regarding the admissibility of evidence for abuse of

10

discretion and will reverse a district court's ruling only if it affects a substantial right of a party. See First Nat'l Bank of Louisville v. Lustig, 96 F.3d 1554, 1574 (5th Cir.1996); United States v. Pace, 10 F.3d 1106, 1115 (5th Cir. 1993); United States v. Coleman, 997 F.2d 1101, 1104 (5th Cir. 1993).

Ramirez attempted to introduce Kendall's affidavit to refute the government's theory explaining the absence of drugs recovered from the transaction.[4]  At trial, the government explained it did not recover drugs from this transaction because it moved too soon. The government contended that Mrs. Ramirez had not yet brought the drugs because she had not yet received the money order from Blount. Blount testified that Mrs. Ramirez did not bring drugs to the prison because she could not purchase them until she received the money order from Blount.  In his affidavit, Kendall affirmed that Blount said the heroin was waiting at Mrs. Ramirez's home.  Ramirez argues this evidence would have rebutted the government's theory concerning the absence of drugs recovered from this transaction.

Assuming the district court did err in excluding the affidavit, we hold the error was harmless because the defense elicited the same information from Blount on cross-examination. Blount testified that he may have said the drugs were at Ramirez's

---

[4]Ramirez requested that the district court issue a subpoena for Kendall as a witness for trial, but the district court denied the request because she did not follow the correct procedures for the subpoena of a government agent.

home, and the defense cross-examined him concerning the inconsistency of his testimony with his statement to Kendall. Secrease also testified that Blount said the drugs were waiting at Ramirez's house. As a result, we find the affidavit would have been cumulative, and its exclusion was merely harmless error.

**CONCLUSION**

For the above reasons, we vacate and remand in part for a hearing concerning the culpability of the government regarding the tapes and affirm the district court's evidentiary ruling.

**REVERSED** AND **REMANDED** IN PART, and **AFFIRMED** IN PART.