# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 19, 2010

No. 08-11127

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRANDON MARQUES GENTLE,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
No.  3:08-CR-30-B

Before JONES, Chief Judge, SMITH, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Brandon Gentle appeals his conviction for bank robbery and aiding and abetting bank robbery in violation of 18 U.S.C. § 2113(a) and (d).  He argues that the district court erred by: (1) permitting the government to cross examine a defense witness about a pending burglary charge, resulting in the "effective exclusion" of that witness's testimony; (2) excluding bias evidence regarding a key Government witness;  and (3) denying his motions for acquittal, and in the alternative, a new trial, which alleged insufficient

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

No. 08-11127

evidence to support his conviction.  For the reasons stated below, we AFFIRM Gentle's conviction.

## I.

On January 14, 2008, Rodrick Hines robbed a Citibank in Dallas, Texas. Gentle dropped Hines off near the Citibank before the robbery.  Shortly after 5 p.m., Hines entered the bank while wearing a ski-mask, gloves, sunglasses, and a hat. A bank surveillance camera captured Hines as he held the teller at gunpoint and ordered her to place money in the plastic liner of her trash can. When an unseen employee activated an alarm, Hines ran out of the bank.  As Hines made his escape down Bearden Street, the plastic trash bag containing the money broke and much of the cash fell to the ground.  Hines got into Gentle's car following the robbery.  Gentle, while driving away, stopped to pick up some of the dropped cash.  Afterward, police apprehended Gentle in the driver's seat of the getaway vehicle, but Hines and a third man had fled the vehicle.  Hines was apprehended, but the third man escaped.[1]

In February 2008, Gentle and Hines were charged with bank robbery and aiding and abetting bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d). Hines pleaded guilty, and Gentle proceeded to trial.  During Gentle's five-day jury trial, the government sought to prove that Gentle knowingly aided and abetted Hines in the robbery by acting as the getaway driver.  Gentle maintained that he had been an unknowing participant in the escape from the robbery—he had no knowledge of Hines's intentions when he drove Hines to the area near the bank, and he was unaware that Hines had robbed the bank when Gentle picked him up after the robbery.  According to Gentle, he had been playing basketball with Hines and Antonio Few that afternoon.  He then gave Hines and a third man a ride. After dropping Hines off at the bank, Gentle went

---

[1] The government contends that this third person was Antonio Few, a cousin of Gentle and Hines. Gentle alleges that he did not know the third person, and that it was not Antonio Few.

to his girlfriend's house where he remained until Hines called him asking to be picked up. Gentle then retrieved Hines near the bank, but was unaware that Hines had robbed the bank until after they had left the scene.

At trial, Hines testified that he decided to rob the bank as Gentle drove him and Antonio Few past the bank. Hines said that although Gentle initially attempted to dissuade him from robbing it, Gentle turned around at Hines's request and drove back toward the bank. Gentle then parked, and Hines dressed for the robbery in Gentle's car. Hines put on a pair of Gentle's gloves, a ski-mask, sunglasses, and a hat, and then left for the bank. Hines testified that the men had agreed to split the money, and Gentle consented to wait for Hines and pick him up after the robbery. He also said that because Gentle was waiting for him, he never called Gentle to be picked up. After the robbery, Hines got into Gentle's car and they stopped to retrieve the dropped cash. Hines also testified that they parked near Brandon's house after the robbery. On cross-examination, Gentle's counsel questioned Hines about his reasons for drastically changing the initial story he gave police, which was that Gentle was not involved in the robbery in any capacity. The defense cross-examined Hines about his motives for changing his story to implicate Gentle and about phone records reflecting multiple phone calls from Gentle to Hines at times when Hines testified that the two were together.

The government also presented evidence to refute Gentle's version of the events on the day of the robbery. Detective Glen Bradshaw testified that immediately after the arrest, Gentle told him that "a guy put a gun to me and made me drive, made me rob the bank." The jury also viewed Gentle's videotaped interview following his arrest, in which he stated that he did not know that Hines had robbed the bank until they had driven away from the area. In that interview, Gentle claimed that Hines had called him to come pick him up. Although Gentle did not give a specific time-frame for the call, the government introduced phone records showing that no call was made near 5 p.m. Hines's fiancé, Kristen Neal, testified that Gentle had called her multiple times

to request that Hines "stick to the story" that Gentle was innocent. Dallas Police Detective Dennis Mumford testified that it would be impossible to drive from his girlfriend's house at the time she alleged he left (after 5 p.m.) and the time the robbery was complete (5:07 p.m.). The government also presented evidence that the ski-mask, hat, and gun used during the robbery were found in close proximity to the arrest scene near Gentle's house, confirming that the items had been transported in Gentle's car. Gentle's arresting officer also testified that he found Gentle in the getaway car after the robbery holding a stack of stolen money.

Gentle's counsel conducted a vigorous cross-examination of the government's witnesses. He questioned Detective Bradshaw about telling lies and giving half-truths to Gentle during the high-pressure "good cop-bad cop" interrogation. He also cross-examined Neal regarding her motives for testifying about Gentle, and about her reasons for making three-way phone calls to Gentle with Hines's mother, Tammy Few, secretly on the line. At the close of the government's case in chief, Gentle moved for a judgment of acquittal based on insufficient evidence to support the verdict, which was denied. Gentle presented statements made by Sylvester Few, Hines's grandfather, referencing an attempt to "bring Gentle down" if Hines "went down." Gentle's girlfriend testified that Gentle was with her during the time of the alleged robbery, and that he did not leave her house until after 5 p.m. Hugo Rico, the man who painted Gentle's car a few days before the robbery, testified that when he spoke with Gentle on the phone at 4:53 p.m. on the day of the robbery, he heard a female voice in the background. The defense also presented testimony from Antonio Few's girlfriend that Antonio Few was with her until 6 p.m. that day, not with Hines and Gentle during the robbery and getaway.

The jury found Gentle guilty of aiding and abetting bank robbery. Following a hearing, the court denied Gentle's motions for new trial and acquittal based on the government's "credible" testimony and the "strong circumstantial proof" supporting Gentle's guilt.

No. 08-11127

## II.

Gentle contends that the district court abused its discretion when it ruled that the government could, under Federal Rule of Evidence 608(b), inquire into defense witness Antonio Few's pending burglary charges on cross-examination. A district court's evidentiary rulings are typically reviewed for abuse of discretion. *United States v. Sanders*, 343 F.3d 511, 517 (5th Cir. 2003). This standard of review is "heightened in a criminal case, however, which demands that evidence . . . be strictly relevant to the particular offense charged." *United States v. Hernandez-Guevara*, 162 F.3d 863, 869 (5th Cir. 1998) (citation and internal quotation marks omitted). A "'trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.'" *United States v. Garcia*, 530 F.3d 348, 351 (5th Cir. 2008). Error is not reversible, however, unless it "substantially prejudiced" the defendant's rights. *United States v. Lopez*, 979 F.2d 1024, 1034 (5th Cir. 1992); *see* Fed R. Crim. P. 52(a).

Gentle's counsel intended to call Antonio Few to testify that, contrary to Hines's account, Antonio Few was not the "third man" involved in the robbery. At the beginning of the defense case, the court considered whether the government would be permitted to cross-examine Antonio Few about his pending burglary charge.[2] The government requested permission to cross-examine Antonio Few about the March 2008 burglary charge "under Rule 608, specifically under Rule 608(b) . . . and that his character for truthfulness can be inquired about on cross-examination with specific instances." The government sought specifically to question him about the circumstances of his burglary arrest

---

[2] Antonio Few had been incarcerated on a pending murder charge and a separate pending charge for burglary of an ATM. The government did not seek to cross-examine him about the murder charge.

because "at the time that he was arrested, Antonio Few had in his possession a black stocking cap, a white mask, and a black pair of gloves that are very similar to the modus that -- or the method that was used in this robbery." The court concluded that the government could inquire about the burglary and the items found in conjunction with his arrest, but prohibited any mention of the ATM machine to guard against prejudice in light of a recent spate of local ATM burglaries. When time came for Antonio Few to testify, Gentle's counsel notified the court that he had decided to invoke his Fifth Amendment right not to testify. The court reaffirmed its restrictions on inquiry into his burglary charge, but explained that "[Antonio Few's] potential bias and prejudice and credibility as a witness can certainly be tested by questioning him on whether or not he actually had a ski mask with him."

Gentle argues on appeal that this ruling effectively precluded Antonio Few from testifying at all and ran afoul of Rule 608(b) which excludes extrinsic evidence of bad acts for which there has been no conviction. He claims that cross-examination into these bad acts is therefore forbidden. Gentle's argument is misplaced; cross-examination is not a form of "extrinsic evidence."[3] *United States v. Townsend*, 31 F.3d 262, 269 (5th Cir. 1994) ("Rule 608(b) provides that specific acts of misconduct, though they cannot be proved by extrinsic evidence, may be elicited on cross-examination."). The court properly permitted the cross-examination into the circumstances of Antonio Few's burglary charge for the purpose of refuting his anticipated testimony that he was not involved in the

---

[3] The trial transcript reveals that the government expressed no intention to bring in extrinsic evidence about Antonio Few's pending burglary charge, and the court consented only to allowing the government to "ask about" these charges.

No. 08-11127

Citibank robbery, and for the purpose of demonstrating bias. Rule 608(b) poses no bar to cross-examination for these purposes.[4]

Gentle has also failed to demonstrate that the prejudice from the cross-examination would have substantially outweighed its probative value. *See* Fed. R. Evid. 403. The court restricted the scope of the cross-examination to prevent undue prejudice, so we find no abuse of discretion.

## III.

Gentle also claims that the district court erred reversibly when it excluded an-out of-court statement allegedly made by Tammy Few, which Gentle offered for the purpose of showing that Hines was biased against Gentle. As noted above, "[w]e review a district court's evidentiary rulings for abuse of discretion." *United States v. Sanders*, 343 F.3d 511, 517 (5th Cir. 2003). If "an abuse of discretion has occurred, we view the error under the harmless error doctrine." *United States v. Townsend*, 31 F.3d 262, 268 (5th Cir. 1994).

Gentle planned to present testimony from various witnesses to establish that Tammy Few and Sylvester Few—Hines's mother and grandfather, respectively—both made statements to the effect of "[i]f Rodrick Hines goes down for this, then Brandon is going to go down, too." The government filed a motion in limine, attempting to exclude those statements as prejudicial hearsay. Gentle responded that the statements were not offered for truth of the matter asserted—to show that the family members really would do anything to bring Gentle down—but to show the "motive, credibility, [and] bias of Rodrick Hines."

---

[4] *United States v. Farias-Farias*, 925 F.2d 805, 810 (5th Cir. 1991) (Rule 608(b) does not "stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony as to a material issue of the case."); *accord United States v. Opager*, 589 F.2d 799, 802 (5th Cir. 1979); *see also United States v. Barrentine*, 591 F.2d 1069, 1081 (5th Cir. 1979) ("When the witness . . . was an accomplice or participant in the crime for which the defendant is being prosecuted, the importance of full cross-examination to disclose possible bias is necessarily increased." (citation omitted)).

No. 08-11127

Concluding that the statement "could realistically be used as a reasonable inference to rely upon that perhaps Mr. Hines had some bias in this," the court admitted Sylvester Few's statement with the limiting instruction that "it's to be considered as state-of-mind testimony to be considered as to the credibility of Mr. Hines." The court expressed some hesitation in its decision:

> . . . [W]e can characterize all of this stuff, Mrs. Few and the grandfather, as to the state of mind. But that doesn't mean that its not just as significant, if not more, for the truth of the matter asserted. And the test is, what does its significance draw from? From where is it derived? *Is it from because it was true, or is it because of the state of mind?* And that's not always clear.
>
> But given the fact that this is a situation involving family members, without question, cousins. I guess Mr. Hines and Mr. Gentle, their grandparents were brother and sister. And we had the young lady here who just testified that is close, obviously, with Mrs. Few. . . .

(emphasis added). Although the court was willing to admit Sylvester Few's statement as evidence of bias, it did not allow the defense to ask about Tammy Few's statement, which was made at a later time:

> I think that is, however you say it, [Tammy Few's statement] seems to me offered more for the truth -- it's an after-the-fact conversation -- than the actual -- on the heels of the detention hearing discussion by the grandfather, which seems much more a state of mind, which I think could be relevant to establish that perhaps there is some anger and heat between the families that could have affected the tenor and the nature of Mr. Hines' testimony.
>
> So I think it's relevant to the credibility of Mr. Hines, and that's it for right now.

Gentle argues that the court's exclusion of Tammy Few's statement was improper because there "is nothing in the Rules of Evidence that would prohibit Gentle from presenting" the testimony to show Hines's "motive and bias." We agree. *United States v. Parry*, 649 F.2d 292, 295 (5th Cir. 1981); *see also United States v. Abel*, 469 U.S. 45, 51 (1984).

8

No. 08-11127

The district court conflated two separate purposes for which testimony may be admitted: (1) showing bias—an impeachment method *which is not* hearsay, and (2) showing state of mind—a hearsay *exception* under Rule 803(3).[5] Determining that the evidence could not be properly admitted under Rule 803(3) to show state of mind, the court excluded it both for that purpose and for the purpose of showing bias. However, by posing this choice, the court failed to consider that it could be offered for bias regardless of whether it constituted evidence of state of mind. *See* Fed. R. Evid. 801(c); *Parry*, 649 F.2d at 295 ("[W]henever an out of court statement is offered for some purpose other than to prove the truth of the matter asserted," the rule against hearsay does not apply because "the value of the statement does not rest upon the declarant's credibility."). As the court determined that the statement was relevant to show Hines's bias against Gentle, excluding it on the basis of failure to show a hearsay exception was error.

Nevertheless, the error was harmless because an identical statement by Sylvester Few was admitted. Where the excluded information "would have been cumulative" of other admitted evidence, its exclusion is "merely harmless error." *United States v. Ramirez*, 174 F.3d 584, 590 (5th Cir. 1999). Gentle's counsel admitted at trial that the statements by Tammy and Sylvester Few were virtually identical and shared "the same wording." Sylvester Few's statement was admitted for the purpose of showing a "family bias" against Gentle,

---

[5] The distinction between hearsay offered under the "state of mind" hearsay exception and nonhearsay has posed challenges for many courts. McCormick on Evidence § 274 (6th ed. 2009) ("Courts . . . have tended to lump together arguably hearsay statements asserting the declarant's state of mind with those arguably nonhearsay that tend to prove state of mind circumstantially, applying a general exception to the hearsay rule and ignoring the possibility that many of these statements could be treated as nonhearsay." (footnote omitted)); *cf. United States v. Harris*, 733 F.2d 994, 1004 (2d Cir. 1984) (recognizing that the phraseology used rendered a statement admissible "*either* as nonhearsay *or* under the then existing state-of-mind hearsay exception." (emphasis added)).

presumably shared by Hines, so Tammy Few's identical statement would have been cumulative if offered for this purpose.  Further, Gentle's counsel argued in summation that Tammy Few and Hines's fiancé were "trying to bring Brandon Gentle down because Rodrick Hines went down, just like they said they would." As Tammy Few's statement was not only cumulative of other evidence admitted at trial, but was also offered in summation for truth, we cannot conclude that its exclusion prejudiced Gentle's substantial rights.

## IV.

Gentle claims the district court erred by denying his motion for new trial and his motion for a judgment of acquittal based on insufficient evidence of guilt. We review a district court's denial of a motion for new trial for "abuse of discretion." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005).  Our review is "deferential to the trial court because the appellate court has only read the record, and, unlike the trial court, did not see the impact of witnesses on the jury or observe the demeanor of witnesses." *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004).  Such motions are disfavored, and the denial will stand unless "the party that was the movant in district court makes a clear showing of an absolute absence of evidence to support the jury's verdict, thus indicating that the trial court had abused its discretion in refusing to find the jury's verdict contrary to the great weight of the evidence." *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179 (5th Cir. 1999) (citations omitted).

Gentle has not made "a clear showing of an absolute absence of evidence to support the jury's verdict." *Id.*  To convict Gentle for aiding and abetting Hines in the robbery, the government was required to show that he: (1) shared in the criminal intent of the principal, (2) participated in the venture through some affirmative conduct designed to aid the venture, and (3) "sought by action" to make the venture succeed. *United States v. Lopez-Urbina*, 434 F.3d 750, 757

No. 08-11127

(5th Cir. 2007). Gentle argues that the there was "no direct credible evidence" to show Gentle's shared intention and agreement to participate in the bank robbery because Hines's testimony as to these elements was "completely discredited." The transcript does not support Gentle's claim that Hines was thoroughly discredited, so he is not entitled to a reversal of the court's denial of his motion for new trial.

Gentle also argues that the court improperly denied his motion for acquittal, and claims that the evidence was legally insufficient to support the jury's verdict. We evaluate claims of evidentiary insufficiency to determine "whether any reasonable trier of fact could have found that the evidence established the appellant's guilt beyond a reasonable doubt." *United States v. Jaramillo*, 42 F.3d 920, 922–23 (5th Cir. 1995). In making this determination, we review the evidence in the light most favorable to the government, *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996), and we may not review the credibility of witnesses or the weight of the evidence. *See United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003).

Gentle's evidentiary sufficiency claim fails because Hines's testimony alone is adequate to support the verdict. When an accomplice testifies that a defendant was a participant in a crime, that testimony is sufficient to sustain a conviction "even if the witness is interested due to a plea bargain or promise of leniency, unless the testimony is incredible or insubstantial on its face." *See United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994) (citations omitted) (finding testimony of a co-conspirator sufficient to support conspiracy conviction); *see also United States v. Dailey*, 208 F. App'x 344, 346 (5th Cir. Dec. 8, 2006) (finding that the accomplices' uncorroborated testimony was sufficient to support a verdict of aiding and abetting bank robbery where the accomplice testified that the defendant participated in the robbery). Hines's testimony covered all elements of the crime, and Gentle has made no argument that it was

No. 08-11127

legally incredible. *See Bermea*, 30 F.3d at 1552. Moreover, the circumstantial and testimonial evidence favored the government overwhelmingly. Gentle admitted to driving Hines to the bank, dropping him off in the vicinity, and picking up money after the bank robbery. The government's witnesses testified that Gentle was found with a stack of money in his hand, and the robbery instruments were found in a place suggesting they were with Hines when Gentle picked him up. The government also presented witness testimony that refuted Gentle's explanation of the day's events, including his claim that he was at his girlfriend's house during the robbery. This is not a case where the evidence gave "equal or nearly equal" circumstantial support to a theory of guilt or innocence. *See United States v. Pennington*, 20 F.3d 593, 597 (5th Cir. 1994). Therefore, we conclude that the verdict was supported by sufficient evidence.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.