IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50175

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NOREEN VENISE ALEXIUS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas
_____

(February 15, 1996)

Before GARWOOD, SMITH and DENNIS, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-appellant Noreen Venise Alexius (Alexius) appeals her conviction under 18 U.S.C. § 1623 for making a false statement under oath.

**Facts and Proceedings Below**

Alexius was previously convicted of harboring an escapee and using a false social security number.[1] This Court affirmed the convictions obtained in that jury trial (the first trial) on direct appeal. Subsequently, Alexius was indicted for making false statements under oath in violation of 18 U.S.C. § 1623 (perjury)

_____

[1] She was acquitted of the third charge brought against her for instigating or assisting a convict's escape in violation of 18 U.S.C. § 752.

while testifying in the first trial. After another jury trial (the perjury trial), Alexius was found guilty of perjury and sentenced to 18 months of imprisonment. Alexius appeals her perjury conviction.

From August 1989 to April 1993, Alexius was employed as a correctional officer at the Federal Prison Camp in El Paso, Texas. During this time, she befriended inmate Patrick Whiting (Whiting). Using a false name, Alexius rented an apartment in El Paso (the Dyer Street apartment) in late March while maintaining her separate residence. Whiting escaped from the prison camp on March 28, 1993. Alexius resigned from her job at the prison camp near the end of April 1993. She subsequently traveled to Chicago. Alexius and Whiting were arrested together on July 1, 1993, in Chicago.

Alexius and her husband, Kellie James (James),[2] testified in her defense at the first trial. After her conviction, she was indicted for perjury committed in the first trial. At the perjury trial, the district court refused to allow Alexius to cross-examine a prosecution witness regarding his pending felony charges.

Alexius appeals her perjury conviction on two grounds. Because we reverse on her complaint respecting cross-examination, we do not reach her *Gaudin*[3] complaint.

### Discussion

---

[2]  Alexius and James were married in December 1993.

[3]  Alexius argues that the district court's failure to submit the issue of materiality to the jury was plain error and mandates reversal under *United States v. Gaudin*, 115 S.Ct. 2310 (1995).

2

Alexius argues that the district court erred by improperly limiting her Sixth Amendment right to cross-examine a prosecution witness. A trial court is given "'wide latitude' in imposing reasonable restraints upon defendant[s'] right to cross-examination." *United States v. Townsend*, 31 F.3d 262, 268 (5th Cir. 1994), *cert. denied* 115 S.Ct. 773 (1995) (citation omitted). We review a district court's restriction of the scope of cross-examination only for abuse of discretion. *Id.* at 267-68. And evidentiary rulings constitute reversible error only when they affect a defendant's substantial rights. *See United States v. Hamilton*, 48 F.3d 149, 154 (5th Cir. 1995) (citing Fed. R. Crim. P. 52 and *United States v. Livingston*, 816 F.2d 184, 190-91 (5th Cir. 1987)).

Prosecution witness Sanford Bailey (Bailey) testified in the perjury trial that (1) Alexius's mother, Caroline Massey (Massey), asked him to purchase a bus ticket for Whiting, and (2) he saw Whiting with Alexius when Massey took him to the Dyer Street apartment. This testimony directly contradicted Alexius's testimony in the first trial, as well as her testimony in the perjury trial, that Whiting never visited her there, calling into question her veracity and that of Massey.[4] Unlike the three other

---

[4]    Massey, a defense witness, denied Bailey's assertions. She testified that she never asked Bailey to purchase a bus ticket and that she never took Bailey to the Dyer Street apartment. Massey further testified that she had never seen Whiting at the Dyer Street apartment.

allegedly perjured statements,[5] Alexius's only defense to the charged perjury in respect to this statement was truth.

At the time of the perjury trial, Bailey was in federal custody on a pending federal felony drug trafficking charge. There was also a drug-related Ohio state charge pending against him. Alexius sought to question Bailey on cross-examination about his arrests and pending criminal drug charges, arguing that these gave him a motive for fabricating his testimony. The district court allowed Alexius to question Bailey outside the presence of the jury. Bailey testified that he had received no promises for his willingness to testify and that he did not know if his decision to

---

[5] Alexius was charged in a single count indictment with knowingly giving false testimony under oath on four subjects relevant to her involvement with Whiting: (1) her receipt of collect telephone calls from Whiting at her residence in El Paso; (2) a purported trip by James to El Paso in early April 1993; (3) a trip she and James purportedly took to Austin in June 1993; and (4) whether Whiting had ever visited the Dyer Street apartment.

Alexius's defense to the charge that she intentionally gave false testimony regarding (2) and (3) above was good faith mistake; she argued that she was merely confused about the dates of James's purported trips.

Alexius's defense to the charge of falsely testifying about the telephone calls involved in part a credibility contest between Alexius and government witness Carol Davis (Davis) and in part a dispute as to what a reasonable interpretation of Alexius's first trial testimony was. More than four hundred collect telephone calls were made from the prison to Alexius's residence between November 1992 and the date of Whiting's escape. No collect calls were made from the prison to Alexius's residence once Whiting escaped. Alexius admitted that she received some of these calls from Whiting, but she testified that Davis, who resided with her between November 1992 and January 1993, became friends with Whiting and was the recipient of most of Whiting's calls. Alexius also testified that she did not accept telephone calls from Whiting until "later." Davis testified that she answered about a dozen calls from Whiting, that she did not know Whiting, and that the extent of her conversations with Whiting was to get Alexius on the line for him.

testify would aid him in his pending charges. The district court then refused to allow Alexius to question Bailey regarding his pending federal or state drug charges in the presence of the jury because it did not "believe there [was] any indication that [Bailey] has a bias or motive for testifying . . . ."

In its brief, the government argues that the district court did not abuse its discretion by refusing to allow Alexius to cross-examine Bailey on his pending charges because any suggestion that the pending charges were relevant to motive or bias was purely speculative. At oral argument, the government also argued that if the district court erred by refusing to allow Alexius to cross-examine Bailey regarding his pending felony charges, the error was harmless. We are not persuaded by either argument.

I.    Abuse of Discretion

The Supreme Court has recognized that a primary interest secured by the Sixth Amendment's Confrontation Clause is the right of cross-examination. *Davis v. Alaska*, 94 S.Ct. 1105, 1110 (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id.* Although the district court retains its broad discretion to prevent repetitive and unduly harassing interrogation, a witness's possible biases, prejudices, or "motivation" are "subject to exploration at trial, and [are] 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Id.* (citation omitted). *See also Olden v. Kentucky*, 109 S.Ct. 480 at 483 (1988).

5

In *Davis*, the government witness who initially identified the defendant was on probation for a burglary committed as a juvenile. *Id.* at 1107. The defense's theory was that the government witness made a hasty and faulty identification of the defendant in order to shift the suspicion away from himself or because he feared that his probationary status would be jeopardized if he did not satisfactorily assist the government in obtaining a conviction. *Id.* at 1108. The district court refused to allow the defendant to question the government witness about his current probation. *Davis*, 94 S.Ct. at 1108. The Supreme Court held that the district court's limitation on cross-examination was an abuse of its discretion and reversed the conviction. *Id.* at 1112.

The instant case is similar to *Davis*. Alexius's theory is that Bailey was lying in order to curry favor with the prosecution. At the time of the perjury trial, Bailey was in a "vulnerable status" with respect to the government, *see id.* at 1111: he was in federal custody on pending federal felony charges.[6] As in *Davis*, "[t]he accuracy and truthfulness of [the government witness's]

---

[6] *See also, e.g., McCormick on Evidence* (3d Ed., 1984) § 40 at 87 ("*Self interest* may be shown also in a criminal case when the witness testifies for the state and it is shown that an indictment is pending against him . . .") (emphasis in original; footnote omitted); 3A Wigmore, *Evidence* (Chadbourn Rev. 1970) § 949 at 790 ("That the witness is or has been *under indictment* may have several bearings: . . . (3) if it is now pending over *a witness for the prosecution* or the *accused* in a criminal case, it is relevant to show the witness' interest in testifying favorably for that side (§ 967, *infra*).") (emphasis in original; footnote omitted); § 967 at 814 ("the *pendency of any indictment* against the witness indicates indirectly a similar possibility of his currying favor by testifying for the state") (emphasis in original; footnote omitted).

testimony were key elements in the [government's] case against" Alexius. *Id.* And, as in *Davis*, "[w]e cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted [Alexius's] line of reasoning had counsel been permitted to fully present it." *Id.*

The government relies primarily on *Hamilton*, 43 F.3d at 149, a post-*Davis* opinion, to support its contention that the district court did not abuse its discretion by excluding any cross-examination regarding Bailey's pending charges.[7] In *Hamilton*, we noted the district court's finding that the government witness did not have an agreement or any pending negotiations with the government regarding his willingness to testify, and we then held that the district court did not abuse its discretion by prohibiting cross-examination into pending state misdemeanor charges against the government witness. *Id.* at 154-55. *Hamilton* does not control the disposition of this case because it is distinguishable in three material ways.

First, the pending charges in *Hamilton* were misdemeanor charges, whereas the charges pending against Bailey were felony charges. Because the penalties for felonies are greater than those for misdemeanors, a witness is more likely to attempt to curry

---

[7] The government also relies upon *United States v. Summers*, 598 F.2d 450 (5th Cir. 1979). *Summers* is inapposite. The district court in *Summers* allowed cross-examination of the government witness into facts sufficient to permit the jury to infer bias and to permit defense counsel to establish a predicate from which he could argue why the witness was biased. *Id.* at 459-61. The district court in the instant case permitted no cross-examination of Bailey into the only facts which showed his possible bias.

7

favor with prosecutors if he is facing felony charges than if he is facing misdemeanor charges. *Cf.* Fed. R. Evid. 609(a)(1) (permitting evidence of a witness's felony convictions, but not general misdemeanor convictions, to impeach the witness's credibility). Second, the pending charges in *Hamilton* were state charges. In the instant case, Bailey was in federal custody for his pending federal felony charge when he testified. In such circumstances, it would be natural for Bailey to desire to curry favor with the federal authorities. It seems likely to us that a witness may expect to obtain less, if any, favor from state officials for testifying in a federal case. *See United States v. Thorn*, 917 F.2d 170, 175-76 (5th Cir. 1990) (holding that district court's refusal to allow cross-examination of government witness's state law indictment did not violate Sixth Amendment because (1) there was no evidence the government could influence the state court proceedings and the existence of pending state court indictment on charges unrelated to offered testimony did not give witness substantial reason to aid the government, and (2) the defendant was able to question the credibility of the government witness through other means). Finally, the defendant in *Hamilton* was allowed to solicit evidence similar to the evidence he sought to obtain on cross-examination from another witness.[8] *See also*

---

[8] The defendant in *Hamilton* sought to cross-examine the government witness about pending misdemeanor DWI and theft charges. *Hamilton*, 48 F.3d at 154. The former girlfriend of the government witness in *Hamilton* testified that "there was a warrant out for [the government witness's] arrest for hot checks in Austin, Texas. The checks totaled $1,000 and he asked me to borrow money from one of

*Thorn*, 917 F.2d at 175-76; *Summers*, 598 F.2d at 459-61. In the instant case, Alexius's only defense on the charge of falsely testifying about the telephone calls was truth and the corresponding attack on Bailey's credibility. The district court's refusal to allow Alexius to cross-examine Bailey regarding his pending charges took away her *only* impeachment evidence.

The district court abused its discretion in refusing to allow Alexius to cross-examine Bailey regarding his pending federal felony charge.

II.   Harmless Error Analysis

The Supreme Court addresses the question whether a constitutional violation affects substantial rights under harmless error analysis. *See Chapman v. California*, 87 S.Ct. 824, 827-28 (1967); *e.g.*, *Delaware v. Van Arsdall*, 106 S.Ct. 1431, 1432-33 (1986)(holding that Sixth Amendment violation should have been reviewed under harmless error analysis). When, as here, reviewed on direct appeal, a constitutional violation is harmless error only if it is clear beyond a reasonable doubt that the error did not contribute to the verdict obtained. *Chapman*, 87 S.Ct. at 828; *see Lowery v. Collins*, 996 F.2d 770, 772 (5th Cir. 1993), *supplementing Lowery v. Collins*, 988 F.2d 1364 (5th Cir. 1993).

The government contended at oral argument that any error was harmless because Bailey testified outside the presence of the jury that he had received no promise of leniency from the government and had no *specific* hope for leniency. In other words, the government

_____

my best friends so that he wouldn't have to go to jail." *Id.*

argues that—because there was no direct evidence of Bailey's motive or bias—cross-examination into the basis of such motive or bias could not have affected the jury's assessment of Bailey's testimony. Neither contention establishes that the error was harmless. *See Davis*, 94 S.Ct. at 1111 (describing the jurors "as the sole triers of fact and credibility" in the context of a district court's limitation of cross-examination into possible bias). Although it would have been proper for the jury to decide that Bailey was not actually influenced by his status as one then being held on federal felony charges, they could have also concluded otherwise. Direct evidence of motive or bias is often unobtainable. This does not preclude the jury from inferring it under appropriate circumstances. *See Carrillo v. Perkins*, 723 F.2d 1165, 1169 (5th Cir. 1984).[9]

The jury could well have questioned Bailey's veracity because a person in Bailey's situation would be under a natural tendency to want to curry favor or "please the prosecution." *Id*. Consequently, we cannot say beyond a reasonable doubt that the jury would have believed Bailey if the district court had not abused its discretion by refusing to allow cross-examination into Bailey's pending federal felony charges. Because Bailey provided the *only*

---

[9] *See also United States v. Rodriguez*, 439 F.2d 782, 783-84 (9th Cir. 1971) (harm from refusing to allow government accomplice witness to be cross-examined as to whether he knew the mandatory minimum sentence if he were prosecuted for the offense and whether he had "any hope or expectation" of leniency not cured by witness' negative answer to a question by court "whether he had been given any *promise* about what the court or prosecutor would do for him because he had testified") (emphasis in original).

evidence supporting the charge that Alexius's statement in the first trial that Whiting had never been to the Dyer Street apartment was untrue—and his testimony was directly contradicted by that of Alexius and Massey—his credibility was crucial to this charge.[10] Alexius's perjury conviction accordingly cannot rest on this statement.

The jury returned a general guilty verdict in the instant case. It does not indicate which statement(s) the jury found to be perjured. The jury may have found Alexius guilty only of testifying falsely about Whiting's presence in the Dyer Street apartment. Consequently, the error cannot be harmless beyond a reasonable doubt.[11]

---

[10] The government at the perjury trial emphasized the importance of the credibility contest. In its closing argument, the government contrasted Alexius's testimony (and her mother's) with Bailey's, asking the jury to consider who had a personal interest in the outcome. Alexius was not allowed to show Bailey's possible interest.

[11] We recognize that in *Griffin v. United States*, 112 S.Ct. 466 (1991), the Supreme Court refused to extend the rule of *Yates v. United States*, 77 S.Ct. 1064 (1957), to situations where one of separate multiple grounds on which a general verdict may have rested lacked adequate evidentiary support. *See also Walther v. Lone Star Gas Co.*, 952 F.2d 119, 126 (5th Cir. 1992). *Griffin* reasoned that since jurors "*are* well equipped to analyze the evidence," there is only a "'remote'" chance "'that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient.'" *Id*. at 474 (quoting *United States v. Townsend*, 924 F.2d 1385, 1414 (7th Cir. 1991)). That rationale is inapplicable here. Alexius' jury may have rested its guilty verdict on her first trial statement that Whiting had never been to the Dyer Street apartment, because the jury had before it Bailey's testimony that Whiting was there with Alexius but did *not* have before it information affecting Bailey's credibility. Because of the limitation on cross-examination of Bailey, the jury was *not* "well equipped to analyze" his testimony. Unlike the situation addressed

11

## Conclusion

For the foregoing reasons, we REVERSE Alexius's conviction and REMAND the case to the district court for another trial.

REVERSED and REMANDED

---

in *Griffin*, there is here no reason to suppose that the jury did not rest its guilty verdict on this statement. And, this statement was the only one of those charged as to which no defense of mistake, confusion, or the like was raised.