# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 10, 2025

Lyle W. Cayce
Clerk

No. 23-40621

United States of America,

*Plaintiff—Appellee*,

*versus*

Jon Phillip Page, Jr.,

*Defendant—Appellant*.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:20-CR-296-2

---

Before Southwick, Oldham, and Ramirez, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

After a week-long jury trial, Jon Phillip Page, Jr., was convicted of conspiring to commit bank fraud and conspiring to commit money laundering. His co-conspirators were his brother Thomas Page and the star witness for the government, Clayton Wertz. The Page brothers were jointly tried and convicted. On appeal, Jon Phillip Page. Jr. (referred to here as "Phillip") raises issues related to recusal, the handling of co-conspirators, evidentiary rulings, pre-indictment delay, rejected jury instructions, and the sufficiency of the evidence. We AFFIRM.

No. 23-40621

## FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Jon Phillip Page, Jr., and his brother Thomas Page (referred to here as "Thomas") sought a multimillion-dollar loan from a bank to fund their partnership's oil and gas investments. The bank would not approve the loan without collateral, prompting Thomas to offer a securities account as collateral. This securities account was worthless, but Thomas contacted Clayton Wertz, asking him to create fake statements showing that the securities account was worth millions of dollars. Over time, the Page brothers would pay Wertz tens of thousands of dollars for his services. They largely stopped paying him in mid-2013, arguably because they recognized he was in too deep to withdraw from the conspiracy. Even without compensation, Wertz continued to create fake statements.

From 2010 to 2012, the brothers borrowed millions of dollars from the bank. The loans required the brothers to use loan proceeds only for business purposes. Some of the funds were ostensibly used for business purposes, but the brothers did not fully honor this limitation. Instead, they used the funds for a variety of non-business purposes, such as paying Wertz to create fake statements. Some funds went to the brothers and their relatives. Other funds went to paying interest on the loan itself.

In early 2019, the bank became suspicious and asked Wertz for more information about the securities account. Sensing that discovery of the fraud was near, Wertz confessed to the bank what he and the brothers had done. He memorialized what he told the bank in an affidavit. A year and a half later, Wertz and the brothers were charged with conspiring to commit bank fraud. The three defendants ended up in front of recently-appointed District Judge Sean Jordan. One of the arguments raised on appeal is that in private practice, the future judge had represented the defrauded bank in other matters. One of those matters was resolved on appeal after Judge Jordan took

2

No. 23-40621

the bench. *See PlainsCapital Bank v. Gonzalez*, 598 S.W.3d 427 (Tex. App.—Corpus Christi 2020, no pet.).[1]

After his confession to the bank, Wertz assisted the Government in preparing its case. Even so, the brothers did not take the Government's initial offer, which would have required them both to plead guilty. In March 2022, Thomas entered an open guilty plea, filing his own factual basis in an apparent attempt to shield his brother from criminal liability. Six days later, the Government filed a superseding indictment, adding a charge of conspiracy to commit money laundering against all three defendants. Phillip moved to dismiss the indictment, arguing that the Government added the charge solely to prevent him from calling his brother as a witness. That motion was denied.

Over the next several months, Thomas and Wertz pled guilty to the conspiracy to commit bank fraud charge. Thomas did not plead guilty to the conspiracy to commit money laundering charge. That same charge was dismissed against Wertz under the terms of his plea agreement. Phillip moved to sever, citing complications presented by his brother's guilty plea to the conspiracy to commit bank fraud charge. That motion was also denied.

The case went to trial in early 2023, around a month after the bank produced some 12,000 pages of bank records. After a one-week jury trial, the brothers were convicted on all counts. We will not summarize the lengthy

---

[1] By the time *Gonzalez* was decided in March 2020, Judge Jordan no longer represented the bank. *Gonzalez*, 598 S.W.3d at 428 (lawyer credits). He had been nominated and confirmed to his judgeship in 2019. His last clear representation of the bank was as lead appellate counsel on the appellant's brief filed on August 17, 2018, though he is also listed in the appellee's brief filed by opposing counsel on September 14, 2018. Appellant's Brief at i, *Gonzalez*, 598 S.W.3d 427 (No. 13-18-00272-CV); Appellee's Brief at ii, *Gonzalez*, 598 S.W.3d 427 (No. 13-18-00272-CV). Wertz and the Page brothers were indicted on October 15, 2020, and the trial began on January 30, 2023.

trial record here, except to say that Wertz was the Government's star witness. Phillip attempted to stake out a defense that he had no role in the conspiracy but had instead been tricked by Thomas and Wertz. The jurors' verdict revealed that they were not convinced.

On October 18, 2023, Phillip was sentenced to 63 months in prison on each count, to run concurrently, along with several years of supervised release thereafter. Judgment was entered the next day. Phillip timely appealed.

## DISCUSSION

On appeal, Phillip raises issues related to (1) recusal, (2) the handling of co-conspirators, (3) evidentiary rulings, (4) pre-indictment delay, (5) rejected jury instructions, and (6) the sufficiency of the evidence. He also argues (7) that even if none of those issues are reversible error, the cumulative error doctrine justifies a new trial. We will address those issues in that order.

We begin with a few points about our standard of review. Most of the alleged errors are reviewed only for an abuse of discretion.[2] Only a few are reviewed *de novo*.[3] The specifics of abuse of discretion review vary based on

---

[2] *United States v. Johnson*, 943 F.3d 214, 220 (5th Cir. 2019) (evidentiary rulings); *United States v. Tarango*, 396 F.3d 666, 671 (5th Cir. 2005) (new trial); *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012) (severance); *United States v. Gray*, 105 F.3d 956, 968 (5th Cir. 1997) (recusal); *United States v. Shah*, 95 F.4th 328, 376 (5th Cir. 2024) (jury instructions); *United States v. Peterson*, 244 F.3d 385, 393 (5th Cir. 2001) (limiting instructions); *United States v. Powell*, 732 F.3d 361, 376 (5th Cir. 2013) (evidentiary decisions surrounding a *Bruton* issue).

[3] *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007) (sufficiency of the evidence); *United States v. Scully*, 951 F.3d 656, 668 (5th Cir. 2020) (pre-indictment delay). Regardless, review of these issues is still deferential. *See United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (*en banc*) (describing the sufficiency of the evidence

the underlying issue, but a court generally "abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005) (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)). Thus, our review of underlying legal conclusions is *de novo*, but our review of underlying findings of fact is for clear error. *Ayestas v. Davis*, 933 F.3d 384, 388 (5th Cir. 2019). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Harris*, 740 F.3d 956, 967 (5th Cir. 2014) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985)).

Any unpreserved issues are reviewed for plain error. FED. R. CRIM. P. 52(b). Reversal for plain error requires (1) an error that (2) is "clear or obvious" and (3) "affected the appellant's substantial rights" (*i.e.*, it "affected the outcome of the district court proceedings"); if the first three steps are satisfied, (4) the court of appeals may exercise its discretion to correct the error, which is appropriate "only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (alteration in original) (quotation marks omitted) (quoting *United States v. Olano*, 507 U.S. 725, 734, 736 (1993)).

---

standard); *Scully*, 951 F.3d at 668 (factual findings in evaluating pre-indictment delay are reviewed for clear error).

A final note: we disregard any nonprejudicial errors. FED. R. CRIM. P. 52(a). The standard for finding that an error was prejudicial varies based on the nature of the error. A constitutional error is prejudicial unless the Government can show that it was harmless beyond a reasonable doubt. *United States v. Alexius*, 76 F.3d 642, 646 (5th Cir. 1996). By contrast, any "nonconstitutional trial error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Lowery*, 135 F.3d 957, 959 (5th Cir. 1998) (quotation marks omitted) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

## I.    *Failure to Recuse*

Phillip argues that the district judge was required to recuse himself because his prior relationship with the victim bank — having represented it in unrelated civil appellate proceedings a few years prior — made it so that "his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). He concedes that he did not preserve this issue and argues we should review for plain error. The Government contends that Phillip's failure to make a timely request for recusal entirely forecloses relief absent "good cause" or "exceptional circumstances" not present here. *See United States v. Sanford*, 157 F.3d 987, 988–89 (5th Cir. 1998). Phillip cannot show even plain error, as we explain.

District judges must recuse themselves when their "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The relevant statute also lists a set of specific circumstances in which district judges must recuse themselves. *Id.* § 455(b). We review a district judge's failure to recuse for an abuse of discretion. *United States v. Gray*, 105 F.3d 956, 968 (5th Cir. 1997). If a district judge should have recused, reopening proceedings is still not strictly required; in deciding upon a remedy, we must consider several factors, including "the risk of injustice to the parties in the particular case,

the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988).

We do not reach this second step of the analysis because Phillip fails to show the district judge was clearly or obviously required to recuse himself under Section 455(a).  He argues that recusal was required because the district judge represented the victim bank in unrelated civil appellate litigation two years before he was indicted.  He does not explain how this unrelated prior representation clearly or obviously required recusal, nor does he cite any authority in his opening brief to substantiate this argument.  The Government, on the other hand, cites meaningful authority demonstrating that recusal has not been required under similar circumstances.[4]  We add that Section 455(b)(2) appears designed to deal with this kind of situation but does not require recusal here because the prior representation was unrelated to this criminal case.  That, too, counsels against finding that the district judge was clearly or obviously required to recuse himself under Section 455(a).  *See Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1166 (5th Cir. 1982) (inapplicability of Section 455(b)(2) was relevant in finding that Section 455(a) did not require recusal).  The district court did not plainly err.

---

[4] *See Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1166 (5th Cir. 1982) (unrelated prior representation of defendant did not require recusal); *National Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 & n.9 (2d Cir. 1978) (same); *Clemens v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 428 F.3d 1175, 1180 (9th Cir. 2005) (professional relationship with victims did not require recusal); *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003) (discussing a case in which unrelated prior representation of victim did not require recusal); *United States v. Saavedra*, No. 22-2149, 2024 WL 855199, at *3 (10th Cir. Feb. 29, 2024) (collecting cases holding that even an active working relationship with a victim in a criminal case does not require recusal).

## II.    *Handling of Co-conspirators*

Phillip raises three categories of issues related to the handling of his co-conspirators, Thomas and Wertz: (1) a potential Confrontation Clause violation based on Thomas's partial guilty plea at rearraignment at the start of trial; (2) problems related to the Government's use of Thomas's and Wertz's guilty pleas without contemporaneous limiting instructions; and (3) a challenge to the denial of Phillip's motion to sever.  We will address those issues in that order.

### A.  *Confrontation Clause*

Phillip argues that his Confrontation Clause rights were violated when Thomas pled guilty to the conspiracy to commit bank fraud charge at the start of trial.  A brief explanation is in order.  The indictment was read aloud during *voir dire*, and the jury was allowed to take it into the jury room for deliberations.[5]  That indictment charged Thomas, Phillip, and Wertz with conspiring together to commit bank fraud.  Phillip contends that when Thomas pled guilty to that charge at the start of trial, the jury would have interpreted his plea as confessing to facts alleged in the indictment, including that Phillip participated in the conspiracy.  Because Phillip could not effectively call Thomas to testify — Thomas was on trial for the conspiracy to commit money laundering charge and could have invoked his Fifth

---

[5] Phillip challenges these uses of the indictment based on a supposedly "inflammatory" paragraph therein, but he fails to cite any authority in his opening brief to explain how the district court erred.  Phillip forfeited his argument by failing to brief it adequately on appeal.  *See United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010).  In any event, the complained-of paragraph spans less than a page and straightforwardly describes the manner and means of the conspiracy.  We fail to see how it was inflammatory and denied Phillip a fair trial, especially when the jury was repeatedly instructed that the indictment was not evidence.  *See United States v. Tucker*, 526 F.2d 279, 283 (5th Cir. 1976) (finding no error when a properly instructed jury was furnished with a copy of the indictment before trial).

Amendment right against self-incrimination — Phillip argues that his constitutional rights under the Confrontation Clause were violated, citing *Bruton v. United States*, 391 U.S. 123 (1968).

"While we review constitutional challenges *de novo*, the trial court's evidentiary decisions on a *Bruton* issue are reviewed for abuse of discretion." *United States v. Powell*, 732 F.3d 361, 376 (5th Cir. 2013) (quoting *United States v. Jimenez*, 509 F.3d 682, 691 (5th Cir. 2007)). At the threshold, we are inclined to agree with the Government that because neither Thomas's guilty plea nor the indictment is evidence, they are not testimonial within the meaning of the Confrontation Clause.[6] *See Crawford v. Washington*, 541 U.S. 36, 50 (2004). The jury was repeatedly instructed not to consider the indictment as evidence.

We leave that question open for another day because Phillip's Confrontation Clause argument fails for a different reason: Thomas's guilty plea did not directly implicate Phillip in the conspiracy. Instead, the jury had to make an inference using other available information. As both the Supreme Court and this court have held, with one narrow exception not applicable here, there can be no *Bruton* violation when the jury must make an inference of this kind. *See Richardson v. Marsh*, 481 U.S. 200, 208–11 (1987); *Samia v. United States*, 599 U.S. 635, 652–55 (2023); *United States v. Nanda*, 867 F.3d

---

[6] Although it is true that in *Douglas v. Alabama*, 380 U.S. 415, 419–20 (1965), a prosecutor's questions — which are not evidence, *United States v. Pando Franco*, 503 F.3d 389, 395 (5th Cir. 2007) — were the basis for a Confrontation Clause violation, that case is distinguishable. In *Douglas*, a witness invoked his Fifth Amendment rights and in response, the prosecutor read his confession line by line in question form. *Douglas*, 380 U.S. at 416–17. The prosecutor's questions were not evidence, but the underlying confession was plainly testimonial. Neither the indictment nor a bare plea is clearly testimonial in the same way.

522, 527–28 (5th Cir. 2017). Because Thomas's guilty plea did not directly implicate Phillip, there was no *Bruton* violation.

### B. Guilty Plea Paperwork and Limiting Instructions

Next, Phillip argues that the Government improperly used (1) Thomas's and Wertz's guilty pleas and (2) Wertz's factual basis and plea agreement. We will address those issues in that order.

### 1. Guilty Pleas

Phillip argues that it was error for Thomas's and Wertz's guilty pleas to be mentioned without a contemporaneous limiting instruction. The parties disagree over the applicable standard of review and whether Phillip preserved this issue. Because Phillip's argument fails even if he preserved the issue, we do not address whether it was preserved. As for our standard of review, we review the denial of requested limiting instructions for an abuse of discretion. *United States v. Peterson*, 244 F.3d 385, 394 (5th Cir. 2001).

We begin with stating that even though contemporaneous limiting instructions on the use of guilty pleas are preferred, a later limiting instruction can suffice. *United States v. Devers*, 4 F.3d 990, 1993 WL 360813, at *2 (5th Cir. 1993) (unpublished but precedential under 5TH CIR. R. 47.5.3) (citing *United States v. Borchardt*, 698 F.2d 697, 701 (5th Cir. 1983)). Limiting instructions, though not contemporaneous ones, were given here. Our review of the use of the guilty pleas is guided by four factors:

> (1) the presence or absence of a limiting instruction;
>
> (2) whether there was a proper evidentiary purpose for introduction of the guilty plea;
>
> (3) whether the plea was improperly emphasized or used as substantive evidence of guilt; and
>
> (4) whether the introduction of the plea was invited by defense counsel.

No. 23-40621

*United States v. Murray*, 988 F.2d 518, 523 (5th Cir. 1993).

Starting with Thomas's guilty plea, the first two factors favor the Government because there was (1) a limiting instruction and (2) a proper evidentiary purpose for introducing Thomas's guilty plea, *i.e.*, informing the jury that it did not need to consider the evidence on the conspiracy to commit bank fraud charge against Thomas because he had already pled guilty. *Cf. United States v. Moparty*, 11 F.4th 280, 293 (5th Cir. 2021) (considering this latter point under the third factor instead of the second factor). The other two factors also favor the Government: (3) Thomas's guilty plea was emphasized primarily by Thomas, not the Government and (4) the introduction of Thomas's guilty plea was invited by Thomas's counsel.[7] Even if some of these factors favored Phillip, this court does not lightly find error in the face of strong curative instructions. *See Moparty*, 11 F.4th at 293 (evenly split factors favored denying motion for a mistrial because of the strength of curative instructions); *United States v. Casto*, 889 F.2d 562, 567–68 (5th Cir. 1989) (curative instructions are normally deemed effective unless the guilty plea "necessarily implicates another or others" (quoting *United States v. Baete*, 414 F.2d 782, 783–84 (5th Cir. 1969))).[8]

_____

[7] It might seem odd to fault Phillip for the actions of Thomas's counsel, but our analysis focuses on whether *the Government* misused Thomas's guilty plea. *See Devers*, 1993 WL 360813, at *2 (finding that these factors favored the Government when a co-defendant's counsel elicited the guilty plea). The Government tried to prevent Thomas's guilty plea from being elicited, but the district court denied the Government's request at the behest of Thomas's counsel.

[8] Phillip's reliance on *Baete*'s language regarding aggravated circumstances is misplaced. *See Casto*, 889 F.2d at 568. Thomas's guilty plea did not "necessarily implicate[]" Phillip. *Id.* (quoting *Baete*, 414 F.2d at 783–84). Although the indictment charged Wertz and the Page brothers as co-conspirators in a conspiracy to commit bank fraud, Thomas's guilty plea only necessarily implied that he conspired with *someone*, and that someone could have been Wertz instead of Phillip. As in *Casto*, Phillip's defensive theory was that he did not knowingly participate in the conspiracy to commit bank fraud.

Turning to Wertz's guilty plea, at least three of the four factors favor the Government: (1) there was a limiting instruction even if not a contemporaneous one; (2) there was a proper evidentiary purpose, *i.e.*, undercutting an inevitable line of impeachment; and (3) the Government emphasized Wertz's testimony, not the mere fact of his guilty plea. *See United States v. Borchardt*, 698 F.2d 697, 701 (5th Cir. 1983) (finding these factors favored the Government on similar facts). The fourth factor alone might favor Phillip because the Government elicited Wertz's guilty plea. Even so, it is of limited weight because Phillip was inevitably going to refer to Wertz's guilty plea to paint him as an unreliable witness — and indeed, Phillip did exactly that. *See United States v. Delgado*, 401 F.3d 290, 300 (5th Cir. 2005) (fourth factor favored the Government when the defendant used guilty pleas elicited by the Government to impeach the witnesses' credibility). There was no error in the use of the guilty pleas.

### 2. *Wertz's Plea Agreement and Factual Basis*

Phillip challenges the admission of Wertz's plea agreement and factual basis as impermissible bolstering. We find no bolstering in Wertz's plea agreement. On the contrary, Wertz's plea agreement, particularly the provision about the possibility of a substantial assistance motion, provided fertile grounds for impeachment. Phillip did not miss his opportunity to use Wertz's plea agreement to paint him as an unreliable witness.

With respect to Wertz's factual basis, Phillip fails to explain how the factual basis was not merely cumulative of Wertz's live testimony (and therefore harmless). In fact, Phillip seems to concede that the factual basis

_____

*Id.* at 568. Thomas's guilty plea was not necessarily inconsistent with that defense, as Phillip seems to recognize, given his claims that he was deprived of a defense witness when the Government filed a superseding indictment adding a conspiracy to commit money laundering charge against Thomas.

was cumulative. Wertz's factual basis was limited and general, taking up just over a page of space and discussed on only three pages of the transcript of his direct examination. Wertz's direct examination spans roughly 80 pages of the trial transcript. It was not error to admit Wertz's plea agreement and factual basis.

### C. Denial of Severance

Phillip also argues the district court erred in denying his motion to sever his case from his brother's. "This court reviews a denial of a motion for severance for abuse of discretion." *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012). Phillip's severance arguments largely echo the arguments just discussed. To the extent that they overlap, they fail for the same reasons. Phillip's only new argument is that there was prejudicial spillover evidence that was admissible only against Thomas. We will discuss some of this evidence later, but for now it suffices to say that Phillip fails to explain how any prejudicial evidence was admissible against Thomas but not against him. At most, he demonstrates that a single WhatsApp message would be inadmissible against him, but as we will explain later, any prejudice from that message was minimal.

This court has already held that joint trials are preferred, "particularly in conspiracy cases," and review of the denial of motion to sever is highly deferential. *United States v. Daniel*, 933 F.3d 370, 380 (5th Cir. 2019) (quoting *United States v. Musquiz*, 45 F.3d 927, 931 (5th Cir. 1995)). Absent "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," severance is not warranted. *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Curative instructions are the preferred remedy for problems caused by joint trials. *Id.* Phillip has not carried his heavy burden of showing that severance was required here.

## III.    *Other Evidentiary Rulings*

Phillip argues that the district court erred in admitting five groups of evidence: (1) Wertz's 2019 affidavit; (2) a WhatsApp message from Thomas to Wertz; (3) Wertz's testimony that the Page brothers told Wertz "This is what you get for dancing with the devil"; (4) photographs of the brothers' homes; and (5) summary charts produced by the Government documenting the brothers' financial transactions.    "We review a district court's evidentiary rulings for abuse of discretion subject to harmless error analysis." *United States v. Johnson*, 943 F.3d 214, 220 (5th Cir. 2019).

### A.  *Wertz's 2019 Affidavit*

Phillip argues that Wertz's 2019 affidavit detailing his involvement in the conspiracy was inadmissible as a prior consistent statement under Federal Rule of Evidence 801(d)(1)(B) because it was made after his motive to lie arose, *i.e.*, he was already in legal jeopardy after having been caught by the bank.  He also argues that the affidavit's admission violated Rule 403 because of the possibility that it could be taken for its truth, thus directly implicating him rather than merely rehabilitating Wertz's credibility.  The second argument collapses into the first: evidence that is admissible under Rule 801(d)(1)(B) is not hearsay and can therefore be taken for its truth. Fed. R. Evid. 801(d)(1)(B); *Tome v. United States*, 513 U.S. 150, 157 (1995).

To be admissible under Rule 801(d)(1)(B), a prior consistent statement "must have been made before the alleged influence, or motive to fabricate, arose." *Tome*, 513 U.S. at 157.  "A prior consistent statement need not rebut all motives to fabricate, but only the specific motive alleged at trial."  *United States v. Wilson*, 355 F.3d 358, 361 (5th Cir. 2003).  The Government argues that, even if Wertz's affidavit was not made before his motive to mitigate his liability arose, *i.e.*, when he was caught by the bank, it

was made before his motive to mitigate his sentence arose, *i.e.*, when he had a plea agreement with the Government raising the possibility of a substantial assistance motion. The Government asserts that rebutting that more recent motive to fabricate is sufficient, even if the affidavit was made after the earlier motive to fabricate arose. In an unpublished opinion, a panel of this court noted the majority view that when multiple motives to fabricate are raised at trial, a prior consistent statement is admissible so long as it was made before at least one of those motives arose. *United States v. Quinn*, 826 F. App'x 337, 340–41 (5th Cir. 2020) (collecting cases).

Even if we were to adopt the majority position, we would still need to determine whether the Government is right that the two motives are actually different. Our precedents suggest that we do not define motives so narrowly. For example, this court has held that when witnesses confessed to law enforcement, the "hopes of receiving leniency from the government" existed even though the witnesses did not yet have "specific plea agreements." *United States v. Portillo*, 969 F.3d 144, 173–74 (5th Cir. 2020). The Government in that case made substantially the same argument that it makes here: the motive to fabricate to avoid charges is not the same as the motive to fabricate to obtain a substantial assistance motion. Appellee's Brief at 93–94, *Portillo*, 969 F.3d 144 (No. 18-50793), 2020 WL 584597. This court rejected that argument, finding that the two motives were one and the same. *Portillo*, 969 F.3d at 173–74. In fairness, Wertz was confessing to the bank, not to Government agents. That might matter under our precedents. *See id.* at 174. Still, we are hesitant to hold that the similar motives here were distinct.

Consequently, we assume *arguendo* that admitting Wertz's 2019 affidavit was an abuse of discretion. Any error was harmless because the affidavit was consistent with Wertz's trial testimony. We have not been referred to anything in the record that would demonstrate the affidavit was

"considerably more detailed and persuasive than the testimony introduced at trial." *Id.* at 177. Further, the Government only briefly mentioned the affidavit during its closing argument, and even then, the Government focused only on the fact that Wertz had confessed to the bank, not on the affidavit's contents or on its consistency with Wertz's trial testimony. Under the circumstances, any error was harmless. *See id.* (finding harmless error when "the government did not heavily rely" on inadmissible prior consistent statements that were duplicative of lengthy trial testimony).

### B. *WhatsApp Message*

Phillip argues that a December 4, 2019 WhatsApp message from Thomas to Wertz, implicating Phillip as a member of "the team", was erroneously admitted under Rule 801(d)(2)(E) because the conspiracy had already ended by that time. He adds that it should have been excluded under Rule 403 because it casts Thomas, and by extension Phillip, in a bad light.[9] The parties disagree on whether Phillip preserved these objections, but Phillip's arguments fail even if he preserved them.

Phillip's first argument fails because any error was harmless. The message never implicates Phillip by name, instead referring only to "the

---

[9] Phillip makes his arguments against the admission of several pieces of evidence by reference to Federal Rule of Evidence 404, the rule about impermissible uses of character evidence. Even so, the argument is ultimately one under Rule 403. There are two steps for analyzing the admissibility of evidence that could be taken for an impermissible character purpose. "First, it must be determined that the . . . evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978); *see also* Fed. R. Evid. 404 advisory committee's note to proposed rule (setting forth the same test). The first step is not at issue here because the Government offered each piece of evidence for a relevant, non-character purpose. All that remains is the question whether the evidence should have been excluded under Rule 403.

team." The jury only learned that "the team" included Phillip through Wertz's testimony. On its own, the message offers only tenuous support for Phillip's guilt. By contrast, Wertz testified extensively as to Phillip's involvement, separate and apart from the message. Only if the jury already believed Wertz's testimony would the message have spoken to Phillip's guilt. In that case, the message would be meager addition to the weight of evidence. Thus, the message cannot be said to have played any significant role in Phillip's conviction.

As to whether the probative value of the evidence was substantially outweighed by unfair prejudice under Rule 403, it certainly was probative in combination with Wertz's testimony, *i.e.*, that Phillip was part of "the team." This court has upheld the admission of even highly inflammatory evidence when it is sufficiently probative. *See, e.g.*, *United States v. Shows Urquidi*, 71 F.4th 357, 373–74 (5th Cir. 2023) (upholding admission of gruesome photographs of victims of cartel murders). Whether any prejudice is considered directly, with Phillip as a member of the gloating "team," or indirectly, through Phillip's family and business relationships with his gloating brother, it did not substantially outweigh the message's probative value.

### C. *"Dancing with the Devil"*

Phillip argues that Wertz's testimony that the Page brothers laughed at him and told him "[t]his is what you get for dancing with the devil" should have been excluded under Rule 403. He concedes that he did not preserve this issue, so we review for plain error.

Wertz's testimony was highly probative of Phillip's knowledge of and involvement in the conspiracy. Wertz testified that he went with the brothers to a restaurant and pleaded with them to pay off the loan because his "whole career [was] in jeopardy." In response, the brothers "laughed and said,

'This is what you get for dancing with the devil.'" That response was highly incriminating. Phillip argues that because the brothers' response made them look unsympathetic — even "unethical and sinister," as he puts it — it should have been excluded. In essence, he argues that perhaps some more abstract version of the conversation would have been admissible, but the brothers' actual response was too inflammatory to admit.

That the testimony was probative means that Phillip must clear an incredibly high bar to show that the testimony should have been excluded. *See Shows Urquidi*, 71 F.4th at 372. Phillip cannot clear that bar. The prosecution is not forbidden from demonstrating the defendant's guilt through detailed evidence just because the crime was committed in a manner that will offend the jury's moral sensitivities. *Cf. Old Chief v. United States*, 519 U.S. 172, 187–88 (1997). That the Page brothers chose to express their disregard for Wertz's plight in a particularly disdainful way does not mandate its exclusion.

### D. *Photographs of the Page Brothers' Homes*

Phillip argues that photographs of the Page brothers' lavish homes improperly invited the jury to convict him for appearing greedy and corrupt, such that the photographs should have been excluded under Rule 403. He concedes that he did not preserve this issue, so we review for plain error.

The Government introduced the photographs as evidence that two witnesses knew the brothers well enough to know what their houses looked like. We reiterate that our standard of review is highly deferential, especially on plain error review. *See Shows Urquidi*, 71 F.4th at 372. Phillip fails to cite relevant case law showing that the admission of the photographs was clear or obvious error, and we are aware of none. Nor does the admission of the photographs present an error so obvious that we would be able to correct it even in the absence of binding precedent. *See United States v. Rao*, 123 F.4th

270, 281 (5th Cir. 2024). Separately, Phillip fails to show that any error affected his substantial rights. The trial record is replete with evidence of Phillip's guilt, and the Government did not emphasize Phillip's wealth during its closing argument. Nothing in the record suggests that the jury's verdict was improperly influenced by the photographs.

### E. Summary Charts

Finally, Phillip argues that the district court abused its discretion in admitting summary charts of financial transactions under Federal Rule of Evidence 1006 without sufficient assurances of accuracy.[10] Phillip argues that inaccuracies and a flawed "first-in, first-out tracing method" made the charts fatally unreliable.

This court's cases set forth only four requirements for the admissibility of summary charts under Rule 1006:

> (1) they are based on competent evidence already before the jury,
>
> (2) the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested,
>
> (3) the chart preparer is available for cross-examination, and
>
> (4) the jury is properly instructed concerning use of the charts.

*United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001). All four requirements were met here.

---

[10] Phillip argues that exhibits 71, 72, 73, and 76 should have been excluded, but his arguments only address flaws in exhibit 73. Thus, Phillip has forfeited any arguments that exhibits 71, 72, and 76 should have been excluded. *See United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010).

No. 23-40621

In addition, summary charts, like all other forms of evidence, are subject to balancing under Rule 403. Fed. R. Evid. 1006 advisory committee's note to 2024 amendment. Thus, "if the summary does not accurately reflect the underlying voluminous evidence, or if it is argumentative, its probative value may be substantially outweighed by the risk of unfair prejudice or confusion." *Id.* Phillip makes that kind of argument here.

Phillip faults the charts for "excluding relevant revenue sources, omitting a $500,000 wire transfer from Colt Ventures, and failing to account for overlapping account transactions." More generally, he criticizes the charts' "first-in, first-out tracing method," noting "the difficulty of definitively linking expenditures to specific loan proceeds due to the fungibility of money."[11]

The only true inaccuracy in the original summary charts — attributing two payments to Phillip that had actually been received by his father (who shares his name) — was corrected in the jury's presence, and substitute charts were admitted. Nothing in the record suggests that the jury relied on these errors in the original charts.

The remainder of Phillip's arguments criticize the methodology used to produce the charts, *i.e.*, how expenditures were traced to loan funds as

---

[11] These two arguments are for the most part one and the same. The charts excluded "relevant revenue sources" and "overlapping account transactions" because of the "first-in, first-out tracing method" the Government used. As far as the $500,000 wire from Colt Ventures is concerned, the witness who prepared the summary charts acknowledged that one of many charts was difficult to prepare because she lacked a particular bank statement for a particular account. She did not concede that the chart was flawed, and she testified that at least the final $88,000 reflected on a later bank statement was loan funds rather than part of a preexisting balance. Given the jury's awareness of the potential flaws in this one chart, any error in admitting the chart was harmless.

opposed to other funds.  To briefly explain, the Government's methodology was as follows:

> (1) when loan funds were deposited into an account, any preexisting balance was noted;
>
> (2) withdrawals were attributed to those preexisting funds until those funds were exhausted; and
>
> (3) once those preexisting funds were exhausted, further withdrawals were attributed to loan funds until the loan funds were exhausted, even if new funds from other sources had been deposited in the time since.

As Phillip puts it, the Government used a "first-in, first-out tracing method."  The Government used its charts to show that some of the loan proceeds were laundered or otherwise used for impermissible non-business purposes.  Phillip extensively critiqued this methodology during cross-examination.

The district court did not abuse its discretion in admitting the summary charts.  Of course, the jury was free to reject the charts as unreliable, and it was well aware of Phillip's criticisms.  That is a question properly left to the jury, if not otherwise an issue to be dealt with in a challenge to expert testimony under Rule 702 (an argument Phillip does not raise on appeal). *Cf. United States v. Means*, 695 F.2d 811, 817 (5th Cir. 1983) (assumptions are permissible in preparing summary charts so long as they are based on supporting evidence and the jury is instructed that it is the sole judge of how much weight to give to the charts).

Even if the district court had erred, it would be harmless.  The charts' shortcomings were made known to the jury through cross-examination, and the jury was appropriately instructed that it should independently consider

No. 23-40621

whether the charts were accurate.[12]  *Bishop*, 264 F.3d at 547.  We have routinely found error in admitting summary charts to be harmless when similar guardrails were present.  *See, e.g.*, *United States v. Spalding*, 894 F.3d 173, 186 (5th Cir. 2018); *United States v. Mazkouri*, 945 F.3d 293, 301 n.1 (5th Cir. 2019).

## IV.  *Prosecutorial Delay*

Phillip makes two arguments relating to prosecutorial delay: (1) that the count for conspiracy to commit money laundering, which was added in the superseding indictment, should have been dismissed for pre-indictment delay; and (2) that the Government violated his due process rights when it did not produce 12,000 pages of bank records until a few weeks before trial.

Regarding delay before indictment, Phillip argues that the Government added the conspiracy to commit money laundering count as a bad-faith tactic designed to prevent him from being able to call Thomas as a witness in his defense.[13]  To explain, six days before the Government added

---

[12] Phillip asserts that the jury was not properly instructed on the proper use of the summary charts, but he does not explain how the district court's cautionary instruction was insufficient.  To the extent that he faults the instruction for not specifying that the charts were not evidence, such an instruction would have been erroneous.  *See Spalding*, 894 F.3d at 185 (summary charts are substantive evidence); FED. R. EVID. 1006 advisory committee's note to 2024 amendment (same).

[13] Phillip and the Government frame this issue as one of pre-indictment delay.  Like the district court, we are skeptical that this is the right framing, as the argument here is less about delay and more about unfairly depriving Phillip of a witness by charging Thomas with a crime.  Still, we accept the parties' framing because, among other things, we are convinced that a more general due process analysis would consider similar factors, *i.e.*, bad faith and prejudice.  *Cf. United States v. Insaulgarat*, 378 F.3d 456, 461 (5th Cir. 2004) (explaining the standard of review for in-trial prosecutorial misconduct); *United States v. Valdes*, 545 F.2d 957, 959–60 (5th Cir. 1977) (prosecutor's good-faith dialogue with a defense witness about the possibility of perjury was neither improper nor prejudicial); *United States v. Fricke*, 684 F.2d 1126, 1130 (5th Cir. 1982) (considering similar principles in evaluating the Government's investigation of possible defense witnesses).

the conspiracy to commit money laundering charge, Thomas had attempted to plead guilty to the conspiracy to commit bank fraud charge. Without the new charge, it is at least arguable that Phillip could have called Thomas to testify without Thomas invoking his Fifth Amendment right against self-incrimination.

"We review *de novo* a district court's denial of a motion to dismiss the indictment, including any underlying constitutional claims, and review the district court's underlying factual findings for clear error." *United States v. Scully*, 951 F.3d 656, 668 (5th Cir. 2020) (quotation marks omitted) (quoting *United States v. Cordova-Soto*, 804 F.3d 714, 718 (5th Cir. 2015)).

> To show that a pre-indictment delay violated the due process clause, a defendant must establish: (1) that the Government intended to delay obtaining an indictment for the purpose of gaining some tactical advantage over the accused . . . or for some other bad faith purpose, and (2) that the improper delay caused actual, substantial prejudice to his defense.

*Id.* (alterations adopted and quotation marks omitted) (quoting *United States v. Seale*, 600 F.3d 473, 479 (5th Cir. 2010)).

The district court found that (1) Phillip did not show "that the Government's filing of the superseding indictment was prompted by the mere possibility of Thomas Page testifying," *i.e.*, the Government filed the superseding indictment in bad faith; and (2) Phillip could not show prejudice because he did not make a proffer of what Thomas would testify to. We review these findings for clear error. *Id.*

First, Phillip's simple assertion of the Government's motive was insufficient to override the district court's findings on clear error review. We agree the timing was suspicious, but we are not "left with the definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395. The district court credited the Government's plausible

explanation "that upon beginning its preparation in earnest in March 2022 for the June 2022 trial setting, it reviewed the evidence and, after considering effective trial strategies, presented the additional money-laundering conspiracy charge to a grand jury." This was a permissible view of the evidence, and thus we cannot say that the district court's finding was clearly erroneous. *Harris*, 740 F.3d at 967.

Second, Phillip cannot show prejudice because he does not make a proffer of Thomas's likely testimony. "A mere loss of potential witnesses is insufficient absent a showing that their testimony would have actually aided the defense." *United States v. Crouch*, 84 F.3d 1497, 1500 (5th Cir. 1996) (*en banc*) (quotation marks omitted) (quoting *United States v. Beszborn*, 21 F.3d 62, 66 (5th Cir. 1994)). Given Thomas's relationship to Phillip and his apparent willingness to testify that Phillip was not involved, it is reasonable to assume that Thomas might have testified to that effect.[14] Regardless, there must be a proffer of what the now-unavailable witness would have said, even under similar circumstances. *See United States v. Proctor*, 505 F.3d 366, 370 (5th Cir. 2007). Absent such a proffer, the district court's finding was not clearly erroneous. The district court did not err in denying Phillip's

---

[14] It remains unclear whether Thomas would have invoked his Fifth Amendment right not to testify. That the Government had not yet charged Thomas with conspiracy to commit money laundering does not mean that it could not have done so in future, separate proceedings. *See United States v. Dixon*, 509 U.S. 688, 703–04 (1993) (holding a later prosecution for an offense involving the same underlying conduct does not violate the Double Jeopardy Clause unless one of the offenses is a lesser-included offense of the other). Absent a plea agreement precluding this possibility — recall Thomas attempted to plead guilty without a plea agreement — Thomas might have seen the writing on the wall and refused to testify.

motion to dismiss the conspiracy to commit money laundering count for pre-indictment delay.[15]

As for the late-produced bank records, Phillip fails to explain how the late production would have justified dismissal rather than some lesser remedy, such as a continuance or the exclusion of evidence. *See* FED. R. CRIM. P. 16(d)(2) (listing a continuance and the exclusion of evidence as the ordinary remedies for failure to comply with discovery rules). Nor does he explain why the bank's late production of records should be attributed to the Government. Indeed, he fails to cite any case law whatsoever on how to evaluate his argument. We find the argument forfeited. *See United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010).

## V.　*Proposed Jury Instructions*

Phillip argues that the district court abused its discretion by denying several requested defensive theory instructions. Specifically, Phillip requested (1) either an apparent authority instruction or a good-faith reliance instruction and (2) an instruction describing his theory of the case. The district court denied those instructions because (1) the willfulness instructions adequately covered his good faith and apparent authority

---

[15] Phillip also argues the district court should have deferred ruling on his motion to dismiss until after the trial, so as to see how any prejudice might play out in practice. The purpose of our preference for deferral is to prevent premature dismissals and unnecessary appeals. *Crouch*, 84 F.3d at 1516–18. In other words, a district court should defer the motion until after trial when it is inclined to grant it but not necessarily when it is inclined to deny it. Either way, further development on prejudice would not have helped Phillip because he failed to demonstrate that the Government acted in bad faith, which provided an independent ground to deny his motion. To the extent Phillip's deferral argument is about the late-produced bank records, he has not adequately preserved that argument, as we discuss below.

theories and (2) Phillip could receive the equivalent benefit of a theory-of-the-case instruction through closing argument.

We review the denial of requested jury instructions for an abuse of discretion. *United States v. Shah*, 95 F.4th 328, 376 (5th Cir. 2024). A district court abuses its discretion in denying a requested jury instruction when three requirements are met:

> (1) the requested instruction is substantively correct;
>
> (2) the requested instruction is not substantially covered in the charge given to the jury; and
>
> (3) it concerns an important point in the trial so that failure to give it seriously impairs the defendant's ability to effectively present a particular defense.

*Id.* at 376–77 (quoting *United States v. St. Gelais*, 952 F.2d 90, 93 (5th Cir. 1992)).

Phillip's defensive theory was that he did not know the securities account was worthless, *i.e.*, he was tricked by Thomas and Wertz. This court recently held that a requested good-faith instruction was unnecessary because it was adequately covered by the instructions for "knowingly" and "willfully." *Id.* at 377. Those instructions were identical to the ones here. Phillip attempts to distinguish *Shah* by arguing *Shah* did not involve good-faith reliance on specific people. That distinction is unpersuasive. The willfulness instruction allowed Phillip to argue that he did not act willfully because he did not know the securities account was worthless. That he relied on the representations of others does not change the basic thrust of that argument. The district court did not abuse its discretion by refusing to give Phillip's apparent authority and good-faith instructions.

The district court did not abuse its discretion by refusing to give Phillip's theory-of-the-case instruction either. This court has drawn a

distinction between instructions that provide a distinct legal principle central to the defense and instructions that are purely narrative and cumulative of existing instructions. A defendant is entitled to the former, but not the latter. *Compare United States v. Washington*, 688 F.2d 953, 957–58 (5th Cir. 1982) (important legal principle not elsewhere in the instructions), *with United States v. Barham*, 595 F.2d 231, 244–45 (5th Cir. 1979) (pure "judicial narrative"). Phillip's theory-of-the-case instruction falls in the latter category. "[T]he requested instruction was more in the nature of a jury argument than a charge. It was for defense counsel to make, not the Judge." *Barham*, 595 F.2d at 245.

## VI.    *Motions for Acquittal and for a New Trial*

Phillip argues there was insufficient evidence that he knowingly participated in the conspiracies to commit bank fraud and money laundering, *i.e.*, that he knew the securities account was worthless and the payments to Wertz and the bank were tied to illicit activity. Relatedly, he argues the district court erred in denying his motion for a new trial because the verdict was against the great weight of the evidence. Given the deferential standard of review applicable to the latter issue, the two issues effectively merge into a basic insufficiency inquiry. *See United States v. Gentle*, 361 F. App'x 575, 581 (5th Cir. 2010) (unpublished) (articulating the standard for a new trial as roughly equivalent to the standard for an unpreserved sufficiency issue).

The essence of Phillip's argument is that Wertz was an unreliable witness. Weighing the credibility of witnesses is beyond the scope of our review; "the jury is the final arbiter of the credibility of witnesses." *United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994). "[A] guilty verdict may be sustained if supported only by the uncorroborated testimony of a coconspirator, even if the witness is interested due to a plea bargain or promise of leniency, unless the testimony is incredible or insubstantial on its

face." *Id.* This is not a case where Wertz's testimony was so incredible that the jury had to disregard it. The district court did not err in denying Phillip's motion for a judgment of acquittal and his related motion for a new trial.

## VII.    *Cumulative Error*

Finally, Phillip argues the cumulative error doctrine justifies a new trial even if other errors are considered harmless. "[T]he cumulative error doctrine . . . provides that an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (*en banc*) (quoting *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998)). The cumulative error doctrine rarely justifies reversal, especially when there is "substantial evidence of guilt." *Id.* at 344. Fundamentally, the question we must answer is whether Phillip received a fair trial. *Id.* He did.

AFFIRMED.